# Scranton, Appellant, *v.* Peoples Coal Company.

*Equity—Mines and mining—Streets—Underlying coal—Removal —Lateral and vertical support—Bill in equity—Injunction—Refusal.*

1. The soil and any mineral deposits within the limits of a highway belong to the owner of the adjacent land and he is entitled to remove them so long as he does not interfere with the public use of the highway.

2. An abutting owner cannot remove minerals from under or adjacent to an established highway in such manner as to cause a subsidence or other injury thereto; to do so is a nuisance, which in a clear case will be restrained in equity at the suit of the municipality. A street is entitled to such support, both lateral and vertical, as will keep it in place.

3. In a suit in equity brought by a municipality to enjoin the owner of coal from removing coal underlying a city street and adjacent thereto plaintiff alleged that the removal of the coal would cause injury to the street by the deprivation of vertical and lateral support. The court found that fifty per cent. of the coal underlying the street could be removed without causing a subsidence therein, and that the removal of the coal on the adjacent property would not cause injury to the street, and refused the injunction as prayed for,

but retained the bill to secure compliance with the restrictions under which it found the mining ought to be done. *Held,* that plaintiff's rights were sufficiently protected and the decree was affirmed.

Argued Feb. 24, 1916.   Appeal, No. 12, Jan. T., 1916, by plaintiff, from decree of C. P. Lackawanna Co., March T., 1915, No. 1, refusing an injunction, in case of City of Scranton v. Peoples Coal Company.   Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and WALLING, JJ. Affirmed.

Bill in equity for an injunction.   Before NEWCOMB, J. The opinion of the Supreme Court states the facts. The court refused the injunction.   Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*David J. Davis,* with him *H. M. Streeter,* for appellant.

*Everett Warren,* with him *Ralph W. Rymer* and *M. J. Martin,* for appellee.

OPINION BY MR. JUSTICE WALLING, January 22, 1917:
This bill in equity was filed to restrain the mining of coal under a public street. Scranton is a city of the second class, and defendant is in the control and operation of a coal mining property situate under and adjacent to Main avenue in said city. This avenue is one of the principal public streets extending through the city in a northerly and southerly direction; and the mining property extends along the street about six blocks, from near Gregory Place to about 110 feet north of Washburn street. This property contains some ten veins of anthracite coal, that nearest the surface being the five-foot vein, at a depth of 83 feet; the next being the four-foot vein, at the depth of about 112 feet. These two are called "surface veins." Below, at greatly increasing

depths and in the following order, are the Diamond vein, the Rock vein, the Big vein, the New County vein, and the Clark vein. The last is some 430 feet below the surface. Above and between said veins it is largely rock formation.

In ordinary mining, from one-third to one-half of the coal is left in the form of pillars to support the overlying strata; and, under modern methods, where there are several veins of coal, such pillars are columnized, that is placed one over the other in the different veins. However, in the early history of anthracite mining such precaution was neglected and the pillars were not well arranged for economy, strength or durability. This has resulted sometimes in mine caves and surface subsidences years after the first mining was completed.

In some of the lower veins of the tract in question, such defective mining was done many years ago. The mining in the vicinity of said avenue in the new county vein, however, seems to have been done by the defendant between 1901 and 1906. When the property came into defendant's possession in 1901, the coal in the surface veins was intact; and all the mining being done by defendant, or in contemplation when this suit was brought, was in the two surface veins; and the main object of this suit was to restrain the same. Defendant does not own all of the coal along said avenue within the limits above stated, as there are some intervening sections owned by others. Defendant's property is located on both sides of the avenue, with the shaft, etc., on the east and the major part of the land on the west side. The avenue is paved with Belgian blocks, and suspended above the surface thereof are electric wires, etc., and underneath the same are gas, sewer and water pipes. In other words it is an important city street, duly established and opened before there was any severance of the surface from the subsurface property in the vicinity where it is located. At long intervals there have been some surface subsidence, upon and near said avenue, the

most notable of which was in January, 1915, when there occurred a decided settlement amounting to about three feet in a portion of said avenue located some 200 feet south of the Simpson Methodist Church lot.  This made a marked change in the grade of the street, did some damage to sidewalks and the buildings on abutting property, and required a change of location of one or more catch basins.  It did not, however, cause any suspension of traffic on said avenue.  Such subsidence seems to have resulted from what is called a squeezing of the pillars in the new county vein, and as a result of the mining done there by the defendant prior to 1906.  On account of that, and other operations in the mines years ago, it is expected that additional surface subsidences will hereafter result, without reference to any present mining operations.  Apparently, the best method of avoiding such subsidences is to fill the existing voids in the mines by an expensive and protracted system of packing and flushing.

The court below approved the findings of the chancellor to the effect that the operations in the surface veins had nothing whatever to do with the subsidences above referred to; and that at least fifty per cent. of the coal could be removed from the surface veins, underneath the avenue, without in any manner endangering the same; and that in removing the coal from the veins outside the limits of the avenue it was not shown to be necessary to make any allowance for its lateral support.

In the final decree the court below refused the injunction restraining defendant from the mining of coal under and adjacent to the avenue, but retained the bill to secure compliance with certain restrictions and specifications in said decree provided.

The title of property abutting on a public street extends to the center of the street and the owner thereof is entitled to all minerals therein, with the right of removal so long as he leaves the street intact.  "The soil and any mineral deposits within the limits of the highway belong

to the owner of the fee, and he is entitled to remove them so long as he does not interfere with the public use of the highway": American & English Encyclopedia of Law (2d Ed.), Vol. 15, page 418.

But the abutting owner cannot remove minerals from under or adjacent to an established highway in such manner as to cause a subsidence or other injury thereto; and to do so is a nuisance, which in a clear case will be restrained in equity at the suit of the municipality. A street is entitled to such support as will keep it in place, both lateral and vertical. If the removal of coal at the side or underneath will destroy the street it may not be done. But such coal may be removed to any amount that will not injure the highway. And the amount that may be so removed is a matter of fact. Here the chancellor finds that 50 per cent. may be safely taken from under the avenue and so decrees. The defendant's operation in the mining of coal on its own premises, outside the bounds of the highway, is certainly prima facie lawful, and the burden is on the plaintiff to show wherein such act will injure the avenue. The chancellor and court below find in effect that the evidence fails to establish plaintiff's contention that to save the avenue from subsidence the coal in the adjacent property must be left in place for lateral support; and also find that such contention is speculative and not based on facts. The chancellor had the advantage of seeing the witnesses and the maps, etc., and, with counsel, visited the mines in question, and had a better opportunity than this court of ascertaining the real conditions; and as his findings were approved by the court below and have the conclusiveness of the verdict of a jury, we cannot say such findings are so manifestly wrong as to justify setting them aside.

If the removal of coal causes such a subsidence in a public street as to constitute a nuisance therein, it is no defense that the mining is skillfully done. An encroachment upon a highway is an invasion of public rights and

cannot be sustained upon any theory of weighing the advantages and disadvantages of the respective parties; and where there is a severance of the surface from the subsurface, an established highway is entitled to the support of both.

A city may go underneath the surface of its streets for the construction of pipe lines, conduits, etc., and for any other lawful municipal purpose.

The question of a mandatory injunction does not seem to be properly raised by the pleadings, or by the statement of the questions involved, and we refrain from discussing it.

The court below, while refusing to grant the injunction prayed for, retained the bill for certain purposes looking to the protection of the public; we cannot say that error was thereby committed. Should necessity require further proceedings, the matter is still in the hands of the court below.

The assignments of error are overruled and the decree is affirmed.