## Kay Realty Corp. v. Elster

S. B. *Narin*, for plaintiff.

H. E. *Kohn* and *Arthur Littleton*, for defendant.

ALESSANDRONI, P. J., November 1, 1960.—Plaintiff's action in ejectment seeks to remove defendant from its sidewalk; defendant maintains a large permanent newsstand on plaintiff's premises situate at the northwest corner of Thirteenth and Market Streets, Philadelphia. The complaint alleges that in the period June 10, 1946-July 1, 1957, defendant had plaintiff's consent for the maintenance of the stand. On or about the latter date, plaintiff demanded payment of rent; when defendant refused this action followed.

Defendant's answer denies that plaintiff had ever given permission for the operation of the newsstand, and that the stand was not located on any property owned by plaintiff. In new matter, defendant avers that the stand has been maintained by adverse possession since 1924, that by reason of the location of the stand within the 100-foot limits of Market Street, plaintiff had no rights in the premises. This latter averment is completely contradictory to the claim of adverse possession, because, if plaintiff had no rights, it is inconceivable that defendant could obtain adverse rights in a public way.

The reply denied that defendant has been operating the stand since 1924 but admits its location within the physical limits of Market Street.

Defendant moved for judgment on the pleadings. The motion contends that: (1) Plaintiff cannot maintain this action in ejectment; (2) plaintiff has no right to demand rent, and finally; (3) plaintiff's action cannot lie because an ordinance of council expressly authorizes defendant and others to maintain newsstands without reference to or the consent of the owner of the abutting premises.

The motion for judgment raises legal issues which question the sufficiency of the complaint and the propriety of granting relief if the allegations therein contained are established.

The legal status of newsstands has been the subject of prior litigation. In 46 S. 52nd St. Corp. v. Manlin, 398 Pa. 304, the court held that, in the absence of either specific municipal authorization or the consent of the owner, the newsstand constituted a nuisance. The actual status of the stands on the sidewalks as such has not as yet been determined; the basic issue has become obscured by efforts to involve the operation of the stands with the constitutional guarantee

of freedom of the press. Focusing of the issue apart from any concern with the fact that newsstands are involved will be of great assistance in reaching a determination.

Although at times it seems trite to restate some fundamental propositions, we start with the right of the owner of real property to exclude the entire world. He has the power of alienation; he can let part of his property; he can use reasonable force to prevent interference with his right of quiet enjoyment; he can devise same. He holds his title subordinate to the paramount authority of government to take all or part of it in the exercise of the power of eminent domain so long as the power be exercised for proper purposes and the owner is compensated. Real property is also held subject to proper and lawful exercise of the police power of the state.

When land is taken for streets the condemning authority generally takes no more than is necessary, i.e., it obtains and purchases an easement over the surface for the use of the public. The owner of the fee has the reversionary interest if the easement is surrendered, abandoned or vacated. Under ordinary circumstances, the owner of property abutting on a public street owns to the center of the street (Scranton v. Peoples Coal Co., 256 Pa. 332); he retains rights over, on and under the surface: Breinig v. Allegheny Co., 332 Pa. 474.

The nature and requirements of urban civilization have extended the limits of the power of control over the public easement in the public interest, although the extension is less marked in the exercise of the power in rural areas. The distinction between urban and rural areas is a real one; the necessities of the circumstances call it into play. Ordinarily no encroachhments can be permitted on the public way be-

cause by definition any obstacle to the public right of transit is in derogation of the rights of the public and further is an additional servitude imposed on the land not within the purchase of the easement.

Despite the principle stated, the needs of urban civilization, and the health and safety of the public in particular, have required some modification of the original proposition.

Thus, it has been held that police power may justify reasonable encroachments on the public way for public services without compensation to the abutting owner. In William Laubach & Sons v. Easton, 347 Pa. 542, the court sustained the exercise of the police power to permit the installation of parking meters; this was held to be a reasonable encroachment on the public way, justified not as part of the easement but as a necessary and proper exercise of the police power. The statement of this principle inferentially supports the proposition that all encroachments on the public way are prohibited unless justified as an exercise of the police power.

It is in accordance with the foregoing principle that the maintenance of mail boxes, fire alarms, police telephones, fire hydrants, trash baskets and the like have been justified. The public need for the services and the minute obstacles to the way are apparent; the relationship to the public health, welfare and safety is crystal clear. In 46 S. 52nd St. Corp. v. Manlin, supra, at page 312, the court observed that no one could successfully argue that the abutting owner would be entitled to compensation for the installation of any of the above on his sidewalk. This again illustrates the proposition that but for urban realities the installation of fire alarm boxes, etc., would constitute an unlawful encroachment, an increase in the servitude.

The municipality is duty bound to maintain the public easement of passage free of the obstruction for the use of the public generally; the abutting property owner is charged with a similar duty in that he may not encroach on the public's right. Nevertheless, he does retain a large residuum of power only so long as he does not interfere with or obstruct the public's way.

In 46 S. 52nd St. Corp. v. Manlin, the court recognized the rights of plaintiff as the fee-owner of the sidewalk. It stated, at page 319, that the owner was entitled to possession free and clear of any encroachment. But this right is subject to the power of the city to relinquish part of its easement for a public use. In addition to the undoubted public services, such as mail boxes, etc., mentioned hereinbefore, the court included, at page 312, ". . . and more recently, Telephone Booths." This latter reference is inaccurate; the ordinance authorizing installation of public telephone booths on the sidewalks requires the specific consent of the abutting owner.

That ordinance clearly recognized the statement of the Supreme Court, in the Manlin case, at page 312, that: "No private use may be made of the sidewalk in opposition to or over the objection of plaintiffs as owners." The ordinance which authorized public telephone booths to be installed on sidewalks provides:

"2. . . .

"(a) No permit shall be issued unless:

"(.5) the consent of the abutting land owner has been obtained."

In reading 46 S. 52nd St. Corp. v. Manlin, supra, it is clear that a newsstand was not a permissive encroachment on the public way under the state of the law at the time of the decision. The court held that in the absence of either municipal or owner consent,

a newsstand constitutes a trespass and its maintenance could be enjoined.

In 46 S. 52nd St. Corp. v. Manlin, supra, the court further held that the ordinances which seemingly permitted newsstands on the sidewalks were not sufficiently explicit. City council enacted an amendment to the ordinance in an effort to cure the flaw. Newsstands are now a specific exemption in the ordinance which generally prohibits all encroachment on the public way. Newsstands are to be permitted within the scope of regulations to be promulgated by the department of streets; licenses are to be required and will be issued upon application to the department.

The ordinance declares that the sale of newspapers and the maintenance of newsstands for such sales are in the public interest and perform a public service. Is the foregoing statement a grant of power to newsstand operators or is it an exercise of the police power to justify an encroachment on the public way? As previously indicated, unless there is a public use, not even the City of Philadelphia may allow encroachments on the way because to do so violates its trust for the public generally. As we read the ordinance, its purpose seems to be the justification for the existence of newsstands generally; it does not purport to grant defendant or any other individual the right to maintain any particular stand. The decision in 46 S. 52nd St. v. Manlin, supra, stands for the proposition that no one has the right to maintain a newsstand on the sidewalk, including the owner of the fee, unless the municipality permits the encroachment in the public interest generally.

What is the legal position now that the city has explicitly authorized newsstands in the exercise of the police power. Under the 46 S. 52nd St. Corp. v. Manlin case, the owner has the undoubted right to set up a

newsstand because both conditions have been met, i.e., municipal authority and consent of the owner. The issue narrowly focused now is: assuming municipal permission, may Elster maintain his stand without the consent of the owner? Stated another way, is municipal permission enough?

Of course, we can but assume at this point that Elster has either a license or has applied for same. Is there any language in the ordinance which denies the requirement of owner consent? Since there is none, can it be reasonably implied?

Defendant cites the ordinance but fails to indicate the language relied upon as authority which precludes the necessity of obtaining owner permission. The ordinance in general terms authorizes newsstands as an encroachment on the way.

The ordinance authorizes the department of streets to adopt regulations "as to size, location and condition, and as to free and safe footway traffic and non-interference with street traffic": Ordinance adopted March 22, 1960. It is silent as to the selection of the individuals who are to operate the locations; it does not provide a system for selection and allocation of locations. It does not authorize the promulgation of tests and standards to determine the selection of newsstand operators. In the absence of such language, the basic authority must lie elsewhere.

The proposition can be tested in the following manner. The ordinance indicates that after all conditions, whatever they may be, are met, one applies to the department of streets for a license. Under ordinary circumstances the department can accept or reject depending on whether or not the regulations applicable have been complied with. This appears to be the limit of the department's authority. If municipal authority were sufficient then it would appear that the Depart-

700

ment could allocate locations as it saw fit; that it could remove one individual and assign another; that it could refuse to license certain operators because there was too much competition. It could force the abutting owner to accept a large permanent business on his sidewalk even though the owner vehemently opposed it. Manifestly the ordinance has not attempted to arrogate unto the City of Philadelphia any such power.

The municipal easement as originally constituted does not include newsstands. The easement is limited to a public right of transit, subject only to proper exercise of the police power. Examples of the latter power have been previously illustrated by reference to fire alarms, police telephones, mail boxes, etc. Are newsstands in the same category? Are they a benefit to the public generally and with the same characteristics of mail boxes, street lights, etc.? Although undoubtedly performing a public service to a point, nevertheless, basically Elster is operating a profit-making, private enterprise, only incidentally a public service. This can be tested by inquiring: Would Elster continue at his location if he had ceased to make and earn a profit? The question answers itself.

Whence comes Elster's authority or is he a squatter on the public way? He has been unable to point to any authority; is he not asserting property rights in plaintiff's property without any authority other than his physical possession of a portion of the sidewalk. His answer suggests that he can defend his location against attempts to displace him; this is a reasonable inference since he even alleges rights by adverse possession. If this be so, then it follows that he claims the right to dispose of his interest. The right to alienate and the power to defend possession are some of the time-honored attributes of property. Elster is, therefore, asserting rights in property owned by another without even the color of right. The fatal flaw in this contention is

the inability of defendant to demonstrate the source of the rights claimed. As previously demonstrated the language of the ordinance provides no such authority.

Defendant in answer to the private enterprise argument contends that McDevitt v. Peoples Nat. Gas Co., 160 Pa. 367, stands for the proposition that a municipality may even authorize the use of the streets and sidewalks for a profit-making business, such as a public utility, despite the usual language to the contrary. There the court sustained an ordinance which permitted the laying of gas mains beneath the surface without any compensation to the abutting owners. The court conceded that the installation of gas mains imposed an additional servitude upon the abutting premises over which the public easement ran and that this additional servitude was not included within the easement of passage. Despite the basic premises set forth the additional burden was held to be damnum absque injuria because of the benefit to the public generally, and compensation need not be paid.

It noted that every lot owner shared in the benefits arising from the appropriation of the subsurface for the gas mains. It was said that, since the city was the representative of the public and was required to consider the needs of health, comfort and business in determining how best to utiliize the public way, in the discharge of its duties the city could impose the additional burden because it was so slight as compared to the benefits obtained.

It is impossible to reach the conclusion that the same principle ought to be applied in the instant case. Plaintiff's property shares no benefits common to all other property in the City of Philadelphia by reason of the maintenance of defendant's newsstand. Another fact which further distinguishes the two situations is the gas company was specifically authorized to appropriate certain streets; here, defendant has no specific

authority to locate the newsstand on plaintiff's property.

It need hardly be argued that the power of government to allow encroachment on the public way is not unlimited. The statement in the ordinance that newsstands perform a public service and are in the public interest does not automatically invest Elster with the status of a public utility nor place him in the category of mail boxes, etc.: Hertz Drivurself Stations, Inc. v. Siggins, 359 Pa. 25. As we read the language of the ordinance, the above statement merely justifies council's action as an exercise of the police power. This power can only be exercised for the benefit of the public and not for the benefit of any one individual. To sustain defendant's contention would require this court to hold that the city, without compensation, may impose an additional burden on land and give it to an individual for individual profit.

The property owner has rights other than those dealing with an increase in the burden, he has an interest when anyone attempts to appropriate the sidewalk or street which extends across the surface of his property. In Hindin v. Samuel, Mayor, 158 Pa. Superior Ct. 539, the court sustained an ordinance which permitted the owner or lessee of premises to object to the location of a licensed peddler on his property, the peddler being licensed by the city to sell certain classifications of food. The court said, at pages 542, 543:

"The sale of food upon the public highways or streets by private individuals for their own purposes and profits is not a public use or a public function of those streets or highways and a *property owner or lessee may object and decline to have his property used for the business enterprise of other people*. Consequently, the section . . . merely gives an additional remedy to the owners . . . for the enforcement of rights they already possess under the law." (Italics supplied.)

The rights of the owner of the fee in other instances have always been recognized; as an illustration, only the owner or someone with his permission may temporarily obstruct the way by storing materials there: Mallory v. Griffey, 85 Pa. 275. Can it be argued that any one else could do likewise on another's property? The owner of the fee is the only one who can act to abate private nuisances on the sidewalk: Hindin v. Samuel, supra.

The imposition of any additional servitude on the fee owner's premises over and above that initially intended can be made only with the consent of the owner or by paying compensation: Duquesne Light Co. v. Duff, 251 Pa. 607. The latter case concerned the erection of utility poles; the court reached a result contrary to McDevitt v. Peoples Natural Gas Co., supra, because in the former case rural property as opposed to urban property was concerned. The distinction is one of degree and not in kind in that both recognized the additional servitude imposed, but urban realities and necessities reduced the servitude to damnum absque injuria, whereas rural realty could not be made to bear the increase without compensation.

Thus, any encroachment which cannot be justified as an exercise of police power imposes an additional servitude on the abutting premises and requires that the owner thereof be compensated. But, nevertheless, even the police power is not unrestricted; its exercise is subject to constitutional limitations: Gambone v. Commonwealth, 375 Pa. 547. It cannot be doubted that the placing of a large permanent newsstand is an encroachment. We seriously doubt the capacity of the City of Philadelphia to grant authority to anyone but the owner of the fee, or someone claming through him, to maintain the newsstand.

Elster and the amici curiae assert that, despite the foregoing analysis, he is within the protection afforded

the press under the Constitution of the United States and this Commonwealth. Freedom of the press includes the right, broadly speaking, of circulation, because the freedom manifestly would be illusory if that which is printed could not be circulated. Freedom of the press enables one to print whatever he will without being subjected to prior censorship; the publisher then has a right to circulate that which he has printed. This guarantee, as with others, is not unrestricted or without limits.

How does Elster come within the provision? He is but a link in the chain of distribution of newspapers and other printed matter such as magazines. He is engaged in the business of selling for profit, a legitimate and time-honored motive. Newspaper publishers are also engaged in the newspaper business for profit. Publishers, as do all other business men, pay the normal costs of doing business. It has not been suggested, nor should it be well received if suggested, that publishers are entitled to operate free of normal business costs and taxes.

Since Elster has a permanent place of business is there any justification for his not paying the normal costs of having a place of business? Cf. Damulewicz v. Kozeniewski, 13 D. & C. 2d 264. Is he not in a completely different category from the individual newsboys who sell newspapers at the rush hour? The distinction between a newsboy and Elster is that the latter is asserting not the right to merely sell newspapers but he is asserting the right to maintain his permanent establishment on property which belongs to another without color of right. Inferentially he argues that requiring the payment of rent would somehow abridge freedom of the press.

We would have no difficulty in finding that if Elster were merely the newsboy mentioned above, his right to use the sidewalk would be constitutionally protected.

But Elster's claim is not so limited. When one establishes a permanent place of business, with all the concomitant rights and responsibilities that that entails, he must buy or otherwise obtain his location. The fact that the Constitution protects freedom of the press has never been held to entitle a publisher to appropriate property of another and place thereon his business establishment, whatever it may be.

The argument can be tested by its effect on newspaper and magazine publishers. Will they be less free and secure in their right to publish? Will their right to circulate that which has been printed for news and information be abridged? The obvious answer to both questions is in the negative. The effect on freedom of the press is nil. The above distinction, a very real one, is simply this: When a newsboy sells newspapers on the sidewalk he is merely exercising a right of passage in general with the public, because when the normal buying time for various editions has passed, he moves on.

He makes no claim to property rights in the property of another. He makes no claim to an exclusive privilege as against the public or property owner to sell at this location. He does not claim a portion of the sidewalk as his own with the power to alienate same or exclude even the owner from that portion. Defendant Elster does all of these things. Obviously he has gone far and beyond the protected right to sell newspapers. He would extend the right to appropriate property, something not even the sovereign Commonwealth of Pennsylvania may do without compensation and for a proper purpose.

The Supreme Court recognized this situation in 46 S. 52d St. Corp. v. Manlin, supra, at page 320, when it said:

"Since defendants do not have permission to maintain the newsstand either from the City or from the

fee-owner, the maintenance of such a newsstand constitutes a trespass upon plaintiffs' property and may be enjoined."

This is a clear statement of the issue; the sidewalk is private property and the court so recognized it. As has been previously demonstrated the ordinance contains no permission for defendant, except insofar as it allows newsstands as a lawful encroachment; but the other condition has not been met, permission from the lot-owner.

Defendant claims that freedom of the press protects his position on the sidewalk, and that the language of the ordinance indicates this. But Elster seeks protection against that which everyone else has to bear, the costs of doing business. Thus, while protected to a point, he cannot obtain privileges at the expenses of the rights of another. Freedom of the press confers no such rights on him.

This action does not seek to enjoin the operation of the newsstand. It seeks merely to require defendant Elster to pay the reasonable rental value for the location, a normal cost of doing business. The action of ejectment seems to be a proper one: Lake Winola Assn. v. Mott & Swatz, 1 Pa. Superior Ct. 304. Plaintiff has undoubted rights in the sidewalk. Compare Borough of Summerhill v. Sherbine, 88 Pa. Superior Ct. 419.

## Order

And now, to wit, November 1, 1960, defendant's motion for judgment on the pleadings is denied.