**City of Philadelphia v. Street**

*Joseph P. Gaffney, Jr.*, for plaintiff.
*Milton Street*, p.p., for defendant.

SPORKIN, J., January 8, 1974.—The City of Philadelphia (plaintiff), trustee under the will of Stephen

Girard, deceased (the trust), brings this equity action against Milton Street (defendant) to enjoin the operation by defendant of a food and drink stand presently located on the sidewalk abutting property owned by plaintiff as part of the trust. Testimony was presented before the writer of this opinion, and argument heard on December 4, 1973. Upon consideration of the testimony adduced, of the briefs and arguments presented before this court, we make the following

## FINDINGS OF FACT

1. Plaintiff, as trustee under the will of Stephen Girard, deceased, is the owner in fee of the block bounded by Chestnut, Market, Eleventh and Twelfth Streets, Philadelphia, Pa.

2. Two private streets, Girard Street and Clover Street, traverse this block from east to west. In the area between these latter streets and fronting on Eleventh Street, plaintiff has erected a multi-story building which now houses the Community College of Philadelphia, an institution encompassing approximately 5,900 students, 500 faculty members and an administrative staff of several hundred.

3. On November 20, 1973, defendant placed a stand to vend food and drinks on the sidewalk abutting the said building, in close proximity to the entrance thereof; since that date, with a few exceptions, the stand has remained at such site continuously, whether in operation or closed.

4. The stand is approximately eight feet high, seven feet long and three and one-half feet wide and weighs approximately 1,500 lbs; it is not self-propelled and although wheeled, can be moved only by a dolly jack.

5. The stand, maintained at such location and in such dimensions impedes ingress and egress to the college and would hinder the orderly evacuation of the

building in the event of a fire or other emergency. Because of its height and location, the stand also blocks the view of pedestrians and drivers approaching the corner of Eleventh and Girard Streets; the flow of pedestrian traffic on the west side of Eleventh Street is also impeded by the stand.

6. At no time has plaintiff entered into an oral or written agreement with defendant for the occupancy of the sidewalk nor has it ever approved or assented to the operation of this stand.

## DISCUSSION OF LAW

It is to be noted at the outset that our Pennsylvania courts consider the fee of a private owner to extend to the middle of the street abutting his building, subject only to an easement of public use: Scranton v. Peoples Coal Co., 256 Pa. 332, 100 Atl. 818 (1917). The fee remains in the abutting owner, subject only to the "public use easement" regardless of whether the easement was acquired by dedication or condemnation: RKO-Stanley Warner Theatres, Inc. v. Mellon National Bank & Trust Co., 436 F. 2d 1297, 1300 (3rd Cir., 1970); 46 S. 52nd St. Corp. v. Manlin, 398 Pa. 304, 157 A. 2d 381 (1960).

The more recent decisions, in defining the scope of the public easement, have held that the rights of the public are regarded as being in the exclusive possession of the municipality, which may authorize the use of a public sidewalk for any "public service," Manlin, supra, at 312, but such a use must be specifically authorized by the municipality "by legislative grant in clear words or by unavoidable implication": Manlin, supra, at 317. The basic proposition remains, however, that a purely private use of such a public sidewalk "not only may be prevented by the municipality, *but is not even permissible*": Manlin, supra, at 314. (Italics

supplied.) See also Benner v. Junker, 190 Pa. 423, 429 43 Atl. 72 (1899); Seibert v. Sebring, 55 Pa. Superior Ct. 475 (1913); Chestnut Hill and Mt. Airy Business Men's Assn. v. City, 87 D. & C. 209 (1954). As cogently expressed by the court in RKO, supra:

"No use outside the scope of the public easement may be made of a sidewalk in opposition to or over the objection of the abutting fee owner. The abutting fee owner's private right is superior to any other private right, and any private use of a sidewalk constitutes a trespassory invasion of the property rights of the abutting fee owner. The Pennsylvania decisions have long made clear that the abutting owner can prevent such uses of the public way": 436 F. 2d at 1303. (Footnotes omitted.)

Our threshold inquiry, therefore, is whether the operation of this stand by defendant is a "public service," or whether it is, in fact, a purely private use of the public sidewalk outside the scope of the public easement. In the case of Hindin, et al. v. Samuel Mayor, et al., 158 Pa. Superior Ct. 539, 45 A. 2d 370 (1946), Judge Ross, writing for a unanimous court, stated, at page 542, that:

"The sale of food upon the public highways or streets by private individuals for their own purposes and profits is not a public use or a public function of those streets or highways and a property owner or lessee may object and decline to have his property used for the business enterprise of other people."

We accordingly conclude that the stand in question, used to sell food and drinks to passersby, is a purely private use maintained by defendant on property owned by another, and thus amounts to a trespass on that property. Nor is such use a "public service" similar to newspaper sales, which have long been protected in the interest of full circulation of information among

the public. A food and drink operation is obviously a purely private enterprise of no greater "public service" than other ordinary types of sales operations, such as a restaurant or a clothes store, and thus is entitled to no greater protection than other such businesses.

Nor can we find merit in the argument, advanced by defendant, that he cannot be enjoined from maintaining his stand because such use has been permitted by the city in section 9-205 of the Philadelphia Code. Section 9-205 prohibits the erection or maintenance of "stands" on certain specified sidewalks, and prohibits operation of any sidewalk stand which reduces the public footway space to less than six feet.

In construing the language of this section, we cannot ignore the well-recognized canon which holds that a court must interpret an ordinance, if at all possible, so as to bring it in harmony with constitutional requirements: Searfoss v. White Haven Borough School District, 397 Pa. 604, 156 A. 2d 841 (1959); Commonwealth v. McCoy, 405 Pa. 23, 172 A. 2d 795 (1961). When read against the background of our previous discussion, however, it is clear to us that were we to adopt the construction of section 9-205 urged by defendant, we would be placing the City in the position of having acquiesced in a purely private use of another's property, without compensation to the owner. Such a policy, if adopted by the municipality, would obviously constitute a "taking" of private property by the municipality without just compensation to the owner, in violation of the Fourteenth Amendment of the United States Constitution: Chestnut Hill and Mt. Airy Business Men's Assn., supra, at pages 226-270.

We are, therefore, constrained to reject the contention of defendant that section 9-205 constitutes a *general grant* by the municipality of *permission* to vendors to set up stands on public sidewalks regard-

less of the objections of the owner of the abutting property; we read the section to have been intended merely as a *restriction* placed by the municipality on the potential blockage of public passage on sidewalks inherent in the existence of sidewalk stands. As such, the section is merely a regulation by the municipality, issued incident to its police powers in the interest of protecting the public safety, and this restriction on the use of sidewalks is in *addition* to, rather than an eradication of, the aforementioned right of an owner of abutting property to prevent a conflicting private use of his land.[1] Thus, we conclude that the operation of this stand by defendant, objected to by plaintiff, is a trespassory invasion which equity must enjoin.

Finally, we come to the assertion by plaintiff that the stand is a nuisance.[2] As stated in our findings of fact, paragraph 5, the stand in its present height and weight, and as presently located, *does* severely hinder the free flow of pedestrian traffic in and out of the building and also obstructs the view of pedestrians and

---

[1] Furthermore, it is to be noted that even if the operation of this stand were held to be a "public service," which could be permitted by the city on public sidewalks, section 9-205 does not amount to the clear and precise grant of authority for such a use as required by Manlin, supra. At best, the section might perhaps be read to impliedly permit such stands, because it prohibits only *some* but not all stands. Assuming, arguendo, that such implication were accepted, however, the interpretation is certainly not an "unavoidable" one, and, therefore, does not rise to the level of the specific authority called for in Manlin.

[2] Defendant argues that the nuisance question is not before this court because it has not been properly pleaded by plaintiff. It is pertinent to observe, however, that paragraph 8 of the complaint alleges that "The use of the stand poses the threat of an obstruction to the quick egress to the Community College building in the event of a fire or other emergency." This averment, in our view, is sufficient to make out an allegation of nuisance, and we find that this issue is thus before the court for determination.

motorists approaching the corner of Eleventh and Girard Streets. It is plain to us, therefore, that the stand in such dimensions and at such location is indeed a nuisance to the property owner and to the general public.

Defendant has offered to reduce the size of the stand, and could obviously move his stand to another location, at a greater distance from the corner of the intersection. This, however, would not be satisfactory relief from the invasion of the abutting owner's rights stemming from the operation of this stand, for the stand is not only a *nuisance* in its present dimensions and location but, no matter in *what* dimensions and no matter to *what* location it could be removed to, on the Community College sidewalk, eliminating or thereby abating the nuisance, it would nevertheless still be a *trespass* as to the abutting land owner, and *any* further operation of the stand on such property thus properly can and will be enjoined by this court in equity.

Accordingly, in light of the foregoing discussion, we reach the following

### CONCLUSIONS OF LAW

1. The fee of a private owner of land extends to the middle of the street abutting his building, subject only to an easement of public use.

2. The use of a public sidewalk for the operation of a food and drink stand is not within the scope of the public use easement.

3. Section 9-205 of the Philadelphia Code does not constitute general authorization by the municipality to erect and maintain stands on public sidewalks in Philadelphia.

4. The operation of a food and drink stand by defendant, Milton Street, on the sidewalks abutting the

716

Community College of Philadelphia, is a trespass against the property rights of the abutting landowner, plaintiff, and, as such, is subject to equitable relief.

## DECREE NISI

1. Defendant, Milton Street, or any party acting by or through him or for his benefit is hereby enjoined from continuing his business of selling from a stand located on the sidewalks abutting the premises of the Philadelphia Community College.

2. Defendant, Milton Street, is directed to remove forthwith the stand now upon the sidewalk abutting such premises.

3. The prothonotary is directed to notify all parties of the filing of this decree nisi and if no exceptions are filed pursuant to Pennsylvania Rule of Civil Procedure 1518, this decree nisi shall be entered by the prothonotary as the final decree in accordance with Pennsylvania Rule of Civil Procedure 1519.