

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2004

# Gorini v. AMP Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3431

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Gorini v. AMP Inc" (2004). *2004 Decisions.* Paper 826.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/826

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos: 02-3431 & 02-3900

JOSEPH B. GORINI

v.

AMP INCORPORATED or,
Its Successor In Interest, TYCO ELECTRONICS, INC.

TYCO ELECTRONICS, INC.,
Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(Civ. No. 99-2215)
District Court: Hon. Yvette Kane

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 18, 2003

Before: McKEE and SMITH, Circuit Judges,
and SCHILLER, District Judge.*

OPINION

McKEE, Circuit Judge.

Tyco Electronics, Inc., appeals the district court's judgment in favor of Joseph

Gorini on claims he brought under the Employee Retirement Income Security Act, 29

U.S.C. §§ 1001 et seq., ("ERISA") and the Worker Adjustment Retraining and

---

* The Honorable Berle M. Schiller, District Judge, Eastern District of Pennsylvania,
sitting by designation.

Notification Act, 29 U.S.C. §§ 2101 et seq., ("WARN") as well as under state law. For the reasons that follow, we will affirm.

## I.

Because we write only for the parties, it is not necessary to recite the facts of this case in detail. It is sufficient to note that Gorini was employed for more than four years by AMP Incorporated, but was terminated in April 1999 following Tyco's acquisition of AMP. Gorini thereafter sued Tyco under ERISA for benefits he was allegedly due under two employment severance plans that Tyco maintained. He also claimed that Tyco should be penalized under ERISA § 502(c)(1)(B), and 29 U.S.C. § 1132(c)(1)(B), for its failure to timely supply requested information regarding those plans, and he claimed that he was entitled to relief under WARN for Tyco's failure to timely notify him of this layoff. He also sought pay for his unused vacation time. Tyco filed two counterclaims seeking recovery of money it sent Gorini in September 1999 and of an overpayment purportedly made to Gorini under one of the plans.

Gorini and Tyco filed cross motions for summary judgment, and the district court granted partial summary judgment on both motions. Tyco was granted summary judgment on Gorini's claim that Tyco had failed to disclose an annual report for one of the severance plans as required under ERISA. Gorini was granted summary judgment on claims that Tyco did not disclose other documents relating to the plans, and the court awarded a penalty of $160,780 under ERISA § 502(c)(1)(B) for four of the five nondisclosures. The court otherwise denied both motions.

The district court disposed of the rest of the claims following a bench trial. It found that Gorini was entitled to damages under WARN and to a portion of the claimed vacation pay, but not to benefits under either severance plan. It also found for Tyco on its first counterclaim regarding the September 1999 check, and against it on its other counterclaim. Tyco now appeals the court's final judgment.[1]

## II.

An order granting partial summary judgment merges into the final judgment. *Bushman v. Halm*, 798 F.2d 651, 654 n.4 (3d Cir. 1986). We exercise plenary review over a partial summary judgment when it is appealed as part of a final judgment. *Hughes v. Consol-Pennsylvania Coal. Co.*, 945 F.2d 594, 611 (3d Cir. 1991). We therefore review any point on which summary judgment was granted to ensure that the party granted judgment was entitled to it as a matter of law and that there was no genuine issue of material fact. *Bellas v. CBS Inc.*, 221 F.3d 517, 522 (3d Cir. 2000). We review a court's findings of fact following trial for clear error but conduct plenary review of its conclusions of law, including those conclusions applied to the facts. *See Feder v. Evans-Feder*, 63 F.3d 217, 222 n.9 (3d Cir. 1995); Fed. R. Civ. P. 52(a).

We review a court's assessment of penalties pursuant to ERISA § 502(c)(1) for abuse of discretion only. However, whether a case "falls in the range within which a district court may exercise discretion is a matter of law, reviewable on a plenary basis."

---

[1] This was the second amended judgment that the court issued in this case. Tyco also appealed the court's amended judgment. We consolidated Tyco's appeals.

*Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 957-58 (3d Cir. 1993). This includes de novo review of whether a district court relied on improper factors in exercising its discretion. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 265-66 (3d Cir. 1983), *rev'd on other grounds sub nomine Matshushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

**A.**

Tyco argues that the district court erred when it awarded Gorini summary judgment on his claim that Tyco failed to disclose documents related to the severance plans because Gorini was not a participant in either plan.

**1.**

A plan administrator has a duty to provide certain plan-related documents upon request to any plan "participant." ERISA §§ 104(b)(4), 502(c)(1) (29 U.S.C. §§ 1024(b)(4), 1132(c)). A "plan participant" is defined as an employee or former employee of the plan sponsor "who is or may become eligible to receive a benefit" under the plan. ERISA § 3(7) (29 U.S.C. § 1002(7)). The Supreme Court has stated that this definition includes a former employee who has "a colorable claim that. . . he or she will prevail in a suit for benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). We have said that "the concept of a colorable claim necessarily encompasses situations in which the requester has a reasonable basis for believing that he or she has a meritorious claim but is in fact mistaken." *Daniels v. Thomas & Bette Corp.*, 263 F. 3d 66, 79 (3d Cir. 2001).

Tyco first argues that the district court did not apply *Bruch* properly when analyzing whether Gorini could be considered a plan participant. It claims the court applied a less rigorous standard, as indicated by the following language:

> As discussed [above], it is premature to decide whether Plaintiff was actually a participant in, and offered benefits under, the 1991 Plan. However, no disputed questions of material fact exist on the question of whether he was or might become eligible for benefits under the Plan. That question turns on whether Plaintiff had a colorable claim for benefits when he requested information about the 1991 Plan. . . .

JA 21. According to Tyco, the court failed to consider the actual likelihood that Gorini would succeed on the merits of his claim for benefits or the reasonableness of his claim.

This argument is meritless. Tyco tries to twist *Bruch* into a more rigorous standard of probability of actual success on the merits of a claim. Under *Bruch*, the district court needed only to determine whether there was enough evidence to establish a colorable claim for benefits. This is a less rigorous standard than the "probability of success" urged by Tyco. The district court properly determined that Gorini had a colorable claim, and therefore properly refrained from inquiring into the actual likelihood that he would succeed on the claim under *Bruch*.

**2.**

Second, Tyco argues that the district court relied on impermissible inferences to find that Gorini was a participant under the severance plan established in 1991. This claim is also meritless.

Tyco tries to claim that Gorini was never qualified for participation in the 1991

5

severance plan because the only people eligible for benefits under it were "regular, full-time, salaried employees," and Gorini made his request for severance benefits after Tyco sent a letter notifying him that his employment was terminated. Tyco's position if adopted, would mean that only current employees could draw on severance plan benefits. That is inconsistent with the very concept of severance benefits. The district court correctly concluded that the severance plan covered regular, full-time salaried employees who had been terminated.

Tyco also tries to argue that Gorini was not a participant in the 1991 plan because, by the terms of the plan, he was only a potential participant unless he signed the release Tyco sent him. Gorini counters noting that he received the April 29, 1999 letter from the human resources department offering him "enhanced severance pay."[2] This letter indicates that he was entitled to severance pay, and states that he was eligible for enhanced pay if he signed a release. This enhanced pay feature was only part of the 1991 plan. Finally, the company's 1997 IRS Form 5500, its 1997 to 1999 summary annual reports, and its employee handbooks back to 1995, state that all its current "regular, full-time, salaried" employees were covered by the 1991 plan. The company also stated on

---

[2] Tyco argues that it is odd that the "ambiguity" that the district court found in the post-termination letters to Gorini supported a colorable claim for benefits but also created an issue of material fact. It then quotes parts of the court's order located at JA 18 and JA 22. However, this ambiguity has two succinct legal consequences. At JA 22, it is used to analyze whether summary judgment is appropriate in Gorini's claim that Tyco should have disclosed the requested information about the plans. At JA 18, it is used to analyze whether Gorini is entitled to benefits under those plans. This ambiguity creates the basis for summary judgment in the former claim while creating a genuine issue of material fact in the latter.

the 1997 IRS form that all Tyco employees were active participants[3] in the 1991 plan.

Together, these facts provide support for the district court's finding that "all employees were participants in the 1991 Plan." Thus, the district court did not err in finding that they all had colorable claims under the plan. JA 18.

Although the defendant is correct when it states that there is ambiguity as to which of the two plans provided the benefits, this does not preclude summary judgment on Gorini's claim for reasons we have already discussed. *See* Note 2, *supra*.

**3.**

Tyco argues that the district court erred in concluding that Tyco did not dispute that Gorini was a participant in the 1998 plan and that Tyco was required to disclose information to him about the plan under ERISA § 104(b)(2). Tyco states that the evidence before the court was such that Gorini "could not have been entitled to receive any further benefits under the 1998 Plan while his document request was pending." Brief at 30.

However, plan information must be disclosed to anyone who has a colorable claim to plan benefits. Tyco admits that Gorini had received benefits under the 1998 plan already. If a court later found that Gorini had a certain status (Tier 1 or 2) under the plan, he would be entitled to additional benefits under this plan. Brief at 30-31. ERISA thus required the plan administrator to provide information about the plan.

---

[3] We need not consider Tyco's argument that "participant" was a term of art in the IRS form because it is raised for the first time on appeal. *See Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994)

7

Tyco claims that the district court abused its discretion in assessing a penalty against it for its failure to disclose plan information under ERISA § 502(c). However, a district court has discretion to impose a penalty under ERISA § 502(c)(1)(B) when a plan participant is denied plan documents he/she is entitled to. 29 U.S.C. § 1132(c); *Daniels v. Thomas & Betts Corp.,* 263 F.3d 66, 79 (3d Cir. 2001). This includes plan descriptions, summary plan descriptions and annual reports. ERISA §§ 102, 103, 104 (29 U.S.C. §§ 1022, 1023, 1024).

Tyco failed to report/disclose plan documents Gorini was entitled to including descriptions of who was entitled to benefits under the 1998 plan and a summary plan description for the 1991 plan. Given this failure and the court's findings that Tyco acted in bad faith to the prejudice of Gorini, the district court clearly did not abuse its discretion in imposing a penalty under ERISA § 502(c)(1)(B).

Tyco correctly notes that it was free to design its 1998 plan as it wished. However, it chose to create a plan that required schedules to be attached containing the names of employees eligible for plan benefits. Once it adopted the plan in 1998, however, it had a responsibility under ERISA to create the schedules in order to provide plan participants with "complete and correct" copies of plan documents. *See Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990).

Despite Tyco's argument that it had simply not yet elected to "modify" its plan by creating the schedules, the 1998 plan nevertheless remained incomplete without them.

Gorini thus had to guess about whether he was an intended beneficiary.

Tyco's claim that ERISA does not require it to create and give participants summary descriptions of its plans also fails. The plain text of ERISA states:

> The administrator of each employee benefit plan shall cause to be furnished in accordance with [29 U.S.C. 1024(b)] to each participant… (1) a summary plan description described in section 1022(a)(1) of this title.
> ***
> A summary plan description of an employee benefit plan shall be furnished to participants… .

29 U.S.C. §§ 1021(a)(1), 1022(a). Gorini was a participant under *Bruch*, when he requested plan information because he had a colorable claim to benefits. Given Tyco's failure to properly disclose plan information, the district court exercised its discretion and imposed statutory penalties under ERISA.

When considering whether to impose such penalties, the court can consider (1) bad faith or intentional conduct of the plan administrator, (2) length of delay, (3) number of requests made, (4) documents withheld, and (5) prejudice to the participant. *Romero v. Smith Kline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002) (citations omitted). Here, the district court found that Tyco's failure evinced a pattern of "conscious choices to decline to disclose" and "recalcitrance"[4] in providing documents Gorini was entitled to under

---

[4] The district court apparently adopted this, and other phrases Gorini used in his Brief in Support of his Motion for Summary Judgment. Tyco uses this to argue that the district court impermissibly relied on unsworn statements in Gorini's brief to impose the penalty. As discussed, however, the district court clearly conducted an independent analysis and marshaled the factual findings and legal conclusions necessary to decide that this penalty was warranted. The court did not merely adopt Gorini's unsworn opinions.

ERISA. JA 30-31. Although the court did not literally use the words "bad faith," given the analysis of Tyco's conduct, it is difficult to reach any conclusion other than that Tyco did act in bad faith.

Finally, Tyco argues that the district court abused its discretion in levying ERISA penalties because "Gorini failed to show that the award of a penalty and that the amount of the penalty would not be a windfall to him." Brief at 37. However, we have never held that a district court *must* consider the issue of a plan participant receiving a windfall in this situation. Rather, a court may refrain from awarding a penalty if a windfall would result. *Hennessy v. F.D.I.C.*, 58 F.3d 908, 923-24 (3d Cir. 1995). Moreover, the burden of proof is not on Gorini; he does not need to negate the contention of a windfall before the court can levy this penalty. *Id.*

## C.

Tyco's next argument is that the district court erred in treating geographically diverse buildings in the greater Harrisburg area as a single site for purposes of the WARN Act claim or, alternatively, in finding that enough people were laid off to make out a WARN Act claim.

To make out a claim under the WARN Act, a plaintiff must prove the occurrence of a "mass layoff." A mass layoff is defined as a loss of employment that was not from a plant closing at a single employment site during any 30-day period for either (1) 33 percent of the full-time employees involving at least 50 employees, or (2) at least 500 full-time employees. *See* 29 U.S.C. § 2101(a)(3). A "single site of employment" is not

10

defined by the statute. Accordingly, courts look to relevant Department of Labor regulations. *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 145 (3d Cir. 1998). DOL regulations define a single site of employment as either a single location or a group of locations in reasonable geographic proximity under the same management with the same operational purpose. 20 C.F.R. § 639.3(I) (2003).

Here, Tyco's employees and former employees admitted that the Tyco layoffs that included Gorini came under the WARN Act. Tyco was therefore obligated to provide notice under the WARN Act and "notice pay." JA 390, 438, 439. Those admissions are consistent with the relation of the facilities in the "Harrisburg Campus" to each other. Moreover, the district court did not need to find that the employment sites involved were absolutely contiguous in order for the WARN Act to apply. It is sufficient that the sites are all in the greater Harrisburg area in multiple contiguous,[5] connected Tyco facilities. The buildings were close together, and shared employees, job functions, and services. Tyco admits that once all eight Tyco locations are found to be a single site of employment that over 500 employees were laid off. Brief at 46.

### D.

Tyco also argues that the district court erred by failing to offset Gorini's severance entitlement by notice pay he received under the 1998 Plan. It argues that the 1998 plan

---

[5] We disagree with Tyco's claim that certain sites were not contiguous because they were separated by streets and highways. Pennsylvania law extends the title of property abutting a street to the center of the street. *City of Scranton v. People's Coal Co.*, 256 Pa. 332, 335 (1917).

specifically requires that the severance pay received under it be offset by any WARN penalties imposed. However, we have already stated that WARN penalties cannot be offset by severance pay without defeating the punitive intent underlying WARN Act penalties, *see Ciarlante*, 143 F.3d at 152. Gorini argues that offsetting severance pay by WARN Act penalties produces the same net effect. We agree. The offset Tyco urges would effectively gut the WARN Act and improperly undermine the precedent of *Ciarlante*.

Moreover, it is clear that Congress intended WARN Act penalties to be added to, not offset by, benefits such as severance pay under ERISA. The WARN Act provides as follows:

> Any employer who orders a plant closing or mass layoff in violation of section 3 of this Act shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for-- (A) back pay for each day of violation...; and (B) benefits under an employee benefit plan described in section 3(3) of the Employee Retirement Income Security Act of 1974. . . .

29 U.S.C. § 2104(a)(1) (2003).

### E.

Tyco argues that the district court erred when it found that Gorini was entitled to pay in lieu of vacation time he did not use. It claims that Gorini could be paid for vacation that he accrued per Tyco's vacation policy, as stated in the AMP Employee Handbook, but not for the additional vacation he negotiated with his supervisor without the approval or knowledge of Tyco's Human Resources Department. According to Tyco,

Gorini failed to prove that the parties agreed to apply the "pay-in-lieu-of-vacation-time" policy to this additional vacation. Gorini argues that the district court did not err when it found that his supervisor gave him extra days of vacation because the additional vacation would be subject to AMP's policy of paying for unused time. We agree. Moreover, there is support in the record for the district court's conclusion that AMP/Tyco knew it would be bound by the supervisor's promises to Gorini. JA 185, 418-19. Based on the letter at JA 185, it is clear that this promise of additional vacation was part of AMP's job offer to Gorini. Tyco's insistence that the agreement for extra vacation days was a sort of "gentlemen's agreement" binding only Gorini's division of AMP is unavailing because Gorini's supervisor had the authority to bind the company to this additional contract term, and he did. JA 51.

**F.**

Tyco's last argument is that the district court erred in concluding that Gorini did not release his claims against Tyco when he cashed a check for enhanced severance from Tyco. This is essentially an argument that Gorini accepted Tyco's offer to settle his claims against it when he cashed its check and that there was an accord and satisfaction.

However, accord and satisfaction requires "a clear and unequivocal offer of payment in full satisfaction" of a disputed debt. *Fleming v. CNA Ins. Co.*, 52 F. Supp. 2d 499, 502 (E.D. Pa. 1999) (citing to the clear and unequivocal requirement for a waiver of legal rights stated in *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 148 (3d Cir.

1999)). Tyco argues it made such a clear and unequivocal offer to Gorini. It claims the offer occurred because (1) Gorini had been told in his May termination letter that he would be entitled to enhanced severance of two months' pay if he signed a release of claims; (2) Gorini received a second check equivalent to two months' pay marked "severanc" (sic); and (3) Gorini knew from his counsel that Tyco sent him this check mistakenly believing he had signed a release of his claim, but that Tyco said he could keep it if he did settle his claims. According to Tyco, Gorini thus accepted the offer by cashing the check.

The record indicates that Gorini thought he was due more money in straight, not enhanced, severance pay at the time he received the check; that the check bore no notations other than "severanc" (sic), and was not accompanied by a release. Gorini's counsel wrote to Tyco and asked what the check was for but never received a response. Tyco's counsel later told Gorini's counsel: "When we sent your client this check, we thought we'd get rid of you," or "When we gave you that check, we thought you'd go away." JA 403-04. Gorini's counsel testified that nobody at Tyco ever said the check was sent in error. JA 404.

The district court found that Gorini was confused about the significance of this payment and its connection to the release, and that finding is not clearly erroneous. The check could reasonably have been seen as an attempt to give him enough money that he would lose interest in pursuing his claims and just "go away." It could also be viewed as

14

an attempt to pay him some of the severance pay he believed he was due. The purpose of the check is unclear, given its notations, its separation in time from the earlier letter regarding enhanced severance pay in exchange for a release, and Tyco's failure to include language of "release" with the check. Tyco did not attempt to clarify the meaning of check despite a request from Gorini to do so. Tyco could merely have printed a release above an endorsement line of the check yet failed to do so.

The district court found that this check was just a mistaken overpayment by Tyco, and that Gorini had to return the money. JA 186-87. That finding is not clearly erroneous.

**III.**

For all of the above reasons, we will affirm the district court.