**Joseph C. LaMAGNA, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendants.**

Civ. A. No. 93–0179.

United States District Court,
District of Columbia.

July 14, 1993.

Howard N. Cayne, Jeffrey C. Blutinger, Arnold & Porter, Washington, DC, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., J. Christopher Kohn, Robert M. Hollis, Karen I. Meyer, Civil Div., Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Plaintiff, Joseph C. LaMagna, seeks enforcement of an employment agreement which the Federal Deposit Insurance Corporation ("FDIC") repudiated after being appointed receiver of Mr. LaMagna's former employer, the American Savings Bank ("American"). The agreement provided that if Mr. LaMagna was terminated without cause before the expiration of the one-year term, he would receive a lump-sum severance payment of $160,000 from American. Shortly after being appointed receiver of American, and before the expiration of Mr. LaMagna's employment agreement, the FDIC terminated Mr. LaMagna's employment without cause. The FDIC has refused to pay LaMagna the $160,000 severance benefits.

Defendant, the FDIC, has moved to dismiss Plaintiff's complaint pursuant to Fed. R.Civ.Pro. 12(b)(6). A hearing on Defendant's motion was held on July 1, 1993. At the hearing, counsel for both parties agreed that this case is ripe for a decision on the merits. Accordingly, this Memorandum Opinion and Order represents the final judgement of this Court.

Mr. LaMagna began working at American Savings Bank in 1987. In the summer of 1991 he was Controller of American. In July 1991, he received an offer of employment from another financial institution, the Dime Savings Bank. American asked LaMagna to remain at the bank as part of a new management team. In August 1991, LaMagna and American finalized a new one-year employment contract. Under the contract, LaMagna was promoted to Executive Vice President and Chief Financial Officer. He was also guaranteed severance benefits of one year's salary ($160,000) in the event he was terminated without cause.[1]

On June 12, 1992, American was declared insolvent and the FDIC was appointed receiver. Shortly thereafter, and prior to the expiration of the one-year term of LaMagna's employment agreement, the FDIC terminated LaMagna's employment at American.

---

1. By the summer of 1991, the FDIC had become involved in American's operations because American was suffering from severe financial difficulties.

Defendant argues (1) that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1811 *et seq.*, authorizes it to repudiate Mr. LaMagna's employment agreement in its entirety and (2) that LaMagna has no rights to any severance benefits because such benefits are not "actual direct compensatory damages" determined at the time the FDIC was appointed receiver of American as required by 12 U.S.C. § 1821(e)(3)(A).

For the reasons stated below, the Court finds that the FDIC, as receiver of the American Savings Bank, must honor the severance clause of Mr. LaMagna's employment agreement. The FDIC will be ordered to issue a receivership certificate to LaMagna in the amount of $160,000 reduced by the *pro rata* distribution factor of American's assets.

FIRREA provides that a receiver may disaffirm or repudiate the uncompleted portion of any contract,

> "the performance of which the . . . receiver . . . in its discretion, determines to be burdensome; and the disaffirmance or repudiation of which the . . . receiver determines . . . will promote the orderly administration of the institution's affairs."

12 U.S.C. § 1821(e)(1).

The FDIC's ability to repudiate LaMagna's employment contract is based upon the extent to which obligations arising from that contract were fixed on the date the FDIC was appointed receiver of American.[2] *See* 12 U.S.C.A. § 1821(e)(3). The dispositive question, therefore, is when LaMagna's severance payment obligation became fixed, or determined.

Contract obligations can be classified as executory and nonexecutory. Executory contracts are those under which neither party has performed his or her obligation under the contract.[3] A nonexecutory contract is one under which liability for performance has accrued because one party has performed his or her contractual obligations. Under FIRREA, the FDIC can repudiate executory contracts. It cannot repudiate contracts which the non-bankrupt party has performed. *See First Nat'l Bank v. Unisys Fin. Corp.*, 779 F.Supp. 85, 86–87 (N.D.Ill. 1991), *aff'd, Unisys Fin. Corp. v. RTC*, 979 F.2d 609 (7th Cir.1992).[4]

In August 1991, LaMagna agreed to remain at American rather than accept the offer from the more secure Dime Savings Bank in exchange for a new one-year contract which included the severance payment. American agreed to pay severance benefits if LaMagna was terminated without cause. The FDIC was aware of the agreement and did not object to its terms.[5] As a result of the agreement, American received the services of an experienced employee for one year. The parties agree that Mr. LaMagna's termination constituted a "Termination Giving Rise to Severance Benefits" under the employment agreement.

The FDIC contends that the severance obligation did not vest until Mr. LaMagna was terminated, which occurred *after* the FDIC was appointed receiver of American. For this reason the FDIC claims it is not liable for the severance payment.

To have any meaning, a promise for severance benefits must vest at the moment the parties finalize their agreement. The very

---

2. Liability for terminated contracts is "limited to actual direct compensatory damages . . . determined as of the date of the appointment of the conservator or receiver." 12 U.S.C.A. § 1821(e)(3)(A).

3. *See Gibson v. RTC*, 750 F.Supp. 1565, 1569 (S.D.Fla.1990) ("reciprocal remaining obligations characterize an executory contract").

4. For example, suppose a stationery company contracts to provide Bank A's stationery for a two year period. One year later, Bank A becomes insolvent and the FDIC is appointed receiver. The FDIC can repudiate the contract as to future stationery deliveries. However, it can-

not repudiate that part of the contract relating to past deliveries for which the bankrupt party has not yet paid. Liability for such deliveries is already "determined" as of the date the FDIC was appointed receiver. The FDIC would be liable only for that portion of the contract that has been executed—one year's worth of delivered stationery.

5. According to LaMagna, his knowledge that the FDIC did not object to the employment agreement, including the severance provisions, was a "decisive factor" in his decision to accept the agreement. Plaintiff's Complaint at ¶ 9.

purpose of the severance provision was to protect LaMagna from the type of events which transpired at American in the summer of 1992. LaMagna's right to the $160,000 severance payment vested the day he and American reached their agreement.[6]

Had American terminated LaMagna without cause one week after reaching the August 1991 employment agreement, there is no question that LaMagna would have been entitled to the severance payment. At the time the FDIC was appointed receiver of American, American's liabilities under its agreement with LaMagna were nonexecutory and therefore not subject to repudiation by either American or the FDIC.

This is not a case of LaMagna receiving a golden parachute[7] that the FDIC could repudiate under FIRREA.[8] The FDIC conceded at oral argument that the severance agreement was not unreasonable or overreaching. What is more, there is nothing in the record that shows that American was insolvent at the time the employment agreement was executed.

In sum, the Court finds that the FDIC's contractual obligation to Mr. LaMagna was determined at the time the FDIC was appointed receiver of the American Savings Bank and that the FDIC is obligated to honor the severance payment provision of the employment agreement.

Accordingly, Defendant's Motion to Dismiss will be denied and Defendant will be directed to issue a receivership certificate to Mr. LaMagna in the amount of $160,000, subject to a reduction according to the *pro rata* distribution of American's assets. An appropriate order accompanies this opinion.

### ORDER

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.Pro. 12(b)(6). Upon consideration of Defendant's motion and Plaintiff's opposition thereto, and after conducting a hearing on the matter on July 1, 1993, for the reasons stated in the foregoing Memorandum Opinion, it is this 14 day of July, 1993 hereby

ORDERED that Defendant's Motion to Dismiss is denied. It is

FURTHER ORDERED that the FDIC issue Mr. LaMagna a receivership certificate in the amount of $160,000, subject to a reduction according to the *pro rata* distribution of American's assets.

---

**6.** The FDIC's argument that Mr. LaMagna's severance benefits did not vest until he was terminated in July of 1992 is untenable. Applying that logic, if LaMagna had been terminated one day before the FDIC was appointed receiver, he would be entitled to his severance benefits. Because he was terminated after receivership, the FDIC argues that LaMagna is not entitled to his benefits.

**7.** "Golden parachute" is defined as "any payment (or agreement to make any payment) in the nature of compensation by any insured depository institution ... that (i) is contingent on the termination of such party's affiliation with the institution or holding company; and (ii) is received on or after the date on which (I) the

insured depository ... is insolvent...." 12 U.S.C. § 1828(k)(4).

**8.** In November 1990, Congress enacted Section 2523 of the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990, 12 U.S.C. § 1828(k)(1), authorizing the FDIC to "prohibit or limit, by regulation or order, any golden parachute or indemnification payment." 12 U.S.C. § 1828(k)(1). The FDIC has never issued any such regulations or orders.

The proposed regulations include a "white knight" exception to Section 2523, permitting severance payments when such payments would help the institution "reverse its slide toward economic failure by attracting competent, new management ...". 56 Fed.Reg. 50,531.