

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-1995

# Hennessy v FDIC

Precedential or Non-Precedential:

Docket 94-1857

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Hennessy v FDIC" (1995). *1995 Decisions.* Paper 178.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/178

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-1857


JOHN T. HENNESSY; MICHAEL B. HIGH;
WILLIAM A. BRACKEN; LARRY GIBSON;
MARTHA C. HITCHCOCK; LAURENCE A. LISS;
KEN MANCINI; GEORGE S. RAPP;
ROBERTA GRIFFIN TORIAN; FRANK J. SORIERO

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR MERITOR SAVINGS BANK
(D.C. Civil No. 93-cv-05589)

THOMAS CALLAHAN

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR MERITOR SAVINGS BANK
(D.C. Civil No. 94-cv-01949)

John T. Hennessy, Roberta Griffin Torian,
Michael B. High, William Bracken, Laurence Liss,
Marty Hitchcock, George S. Rapp, Kenneth R. Mancini,
Lawrence J. Gibson, Frank J. Soriero and Thomas Callahan,

<u>Appellants</u>


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 93-cv-05589)


No. 94-1933


DAVID A. CAMPBELL, JR.; ROBERT F. HANNA;
LESLIE VOTH; HELEN T. DEMARCO, individually, and

ROBERT F. HANNA; HELEN T. DEMARCO, on behalf of

themselves and all others similarly situated,
(SEPARATION PLAN CLASS), and

DAVID A. CAMPBELL, JR.,
on behalf of himself and all others similarly
situated, (RETIREE HEALTH CLASS), and

DAVID A. CAMPBELL, JR.; ROBERT F. HANNA,
on behalf of themselves and all others
similarly situated, (LIFE INSURANCE CLASS)

v.

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR MERITOR SAVINGS BANK

David A. Campbell, Jr., Robert F. Hanna,
Helen T. DeMarco and Leslie Voth,

<u>Appellants</u>

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 93-cv-03969)

No. 94-1934

JOSEPH A. ADOLF, LAURENCE J. ARNOLD,
CHRISTIAN F. AURIG, GEORGE W. BARBER,
LINDA C. BARCH, RICHARD F. BATE, OWEN J. BEHEN,
LAUREN BETHEA, ELIZABETH L. BLANKENHORN,
ANNE MARIE BOBACK, SUSAN M. BROWN,
JOHN J. BUCZEK, GEORGE S. BUNTING, MARY ANN C. BURCH,
EDITH BURKEITT, THOMAS P. CALLAHAN,
DAVID A. CAMPBELL, JR., KARLA J. CARNEY,
JOHN M. CASAMENTO, JR., WILLIAM J. CATHCART,
LISA CAVALLI, NANCY L. CEFFARATTI, JOSEPH D. CELLUCCI,
ESTHER CERBO, CAROLE A. CIRCUCCI, ANTHONY R. COOGAN,
LARRY A. COOK, SAMUEL J. COOK, WALLACE P. COONEY,
PAUL L. COPPOLA, LORENE C. COQUILLETTE,
BETTY R. CORLEY, HARRIET S. CORLEY, JOAN T. CORSON,
DAVID E. COVERDALE, MARY C. CRAIGE, LOIUS T. CULLEN,
JOHN F. CULP, EDWARD D. CUSTER, MICHAEL CZINCILA,
JOAN E. DEBES, IRENE V. DELIZZIO, GAIL L. DELVISCIO,
HAROLD L. DEMPSEY, HAROLD C. DENGEL,

DEBRA ANNE DENIGHT, BEATRICE L. DESHER,
JOSEPH H. DEVORE, JR., ANNA S. DIFELICE,
MARIO DIFELICE, MARY ANN DIGREGORIO,
LEONID A. DOBRININ, SARAH S. DOODY, JOSEPH M. DUFFY,
LEONARD T. EBERT, JOHN A. FATULA, CHARLES J. FERRIE,
GEORGE W. FETTERS, JR., LORE L. FISHER, JOHN P. FOGARTY,
CYNTHIA M. FORD, DORIS GAGLIARDI, BARBARA A. GIBSON,
FRANCES J. GILLEN, WILLIAM R. GOETTLE,
CHARLES W. GRAY, III, EUGENE A. HEIWIG,
WILLIAM H. HILLIARD, WILLIAM H.H. HSU,
STANLEY E. HUNT, CHARLES C. JONES,
THOMAS C. KEISER, KATHLEEN F. KELLY, LYNN M. KELLY,
ETHEL S. KEOWEN, JOHN ANDREW KINNERMAN,
PHILIP W. KLINGER, C. ANDREW KREPPS, JR.,
JOHN DAVID LAMBERT, MICHAEL G. LEWIS,
PATRICIA LEUTHY, SALVATORE LIZZIO, ALDO S. LOMBARDI,
ELISABETH W. LORD, KATHLEEN LYNCH, E. DAVID MACNALLY,
WILLIAM C. MACNEILL, JR., FRANK JOSEPH MARULLO,
EDWARD M. MASON, JR., THOMAS G. MARVEL,
RUTH A. MCALLISTER, JOSEPH F. MCCOLE,
CHRISTINE D. MCCORMICK, PHILIP J. MCCORMICK,
JANET B. MCCOURT, DAVID C. MELNICOFF, FREDA I. MILLAR,
ANTHONY M. MINGARINO, JOSEPH J. MOFFA,
LINDA LEE MONTANA, BARBARA L. MORGAN,
MARION D. MORGAN, LEONARD V. MORRIS,
DAVID D. MORRISON, MARY T. MURPHY, ANTHONY J. NOCELLA,
WILLIAM A. NORRIS, III, MARTHA K. NYLUND,
MARY E. ORR, JOHN T. OSMIAN, CHARLES E. PADGETT,
PATRICIA PAWLING, HOWARD F. PEARCE,
CATHERINE P. PICCONE, PETER P. PRYZBYLKOWSKI,
DARLENE E. PURUGGANAN, ELIZABETH L. RAFETTO,
EDWARD W. RAPP, LUBA K. REILLY, LOUISE M. REITANO,
ANTOINETTE D. RENDINO, MS. JAMIE RINDOCK,
JEAN DAVIS ROBINSON, RICHARD ROGERS, DIANE S. ROHR,
HERBERT A. ROTH, ANTHONY J. SANTILLI, JR.,
KATHLEEN M. SAWCHYNSKY, RUTH C. SCHMIDT,
MICHAEL F. SCUTTI, MARTIN SELGRATH, JOHN W. SEMPLE,
JOSEPH F. SLANE, ROBERT A. SMALLEY, ELIZABETH K. SONNEBORN,
FRED B. STAAS, WALTER R. STAPLES, ROBERT C. STEINMAN,
ARTHUR W. STETTLER, JEAN J. STUBBS, ANTHONY TABASCO,
ROBERT B. TAYLOR, ANNITA L. TEDESCO, KENNETH C. THOMAS,
PATRICIA E. THOMPSON, DIANNE T. TINDALL,
JAMES M. TOOLAN, MORRIS VARANO, STANLEY J. VERBEEK,
DONNA VOLZ, LESLIE C. VOTH, THERESA M. WEBB,
CYNTHIA WEST, ROBERT B. WHITELAW, ALTON T. WINNER, JR.,
ANNE M. WISE, VERDELLA WRIGHT, ANTHONY J. ZONGARO AND
LINA G. ZANONI,

Appellants

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR MERITOR SAVINGS BANK

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 94-cv-01499)

Argued May 16, 1995

Before:  COWEN, LEWIS and GARTH, Circuit Judges

(Filed  June 29, l995 )

Alice W. Ballard (argued)
Samuel & Ballard
225 South 15th Street
Suite 1700
Philadelphia, PA 19102

    COUNSEL FOR APPELLANTS
    in No. 94-1857

Harry C. Barbin (argued)
Barbin, Lauffer & O'Connell
608 Huntingdon Pike
Rockledge, PA 19046

    COUNSEL FOR APPELLANTS
    in No. 94-1933

Harry C. Barbin (argued)
William M. O'Connell
Barbin, Lauffer & O'Connell
608 Huntingdon Pike
Rockledge, PA 19046

    COUNSEL FOR APPELLANTS
    in No. 94-1934

Jaclyn C. Taner (argued)
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, DC 20429

COUNSEL FOR APPELLEE
Federal Deposit Insurance Corporation
as Receiver for Meritor Savings Bank

OPINION

COWEN, Circuit Judge:

Plaintiffs in these related cases, former employees and managers of Meritor Savings Bank, appeal from three orders of the district court that granted summary judgment in favor of the defendant, the Federal Deposit Insurance Corporation ("FDIC"), on their claims to recover severance pay, medical benefits, and life insurance benefits pursuant to the terms of their employee welfare benefit plans. The issues raised in these appeals are whether the district court erred in determining that: (1) the FDIC's takeover and sale of Meritor was not a reorganization for purposes of the plaintiffs' separation pay plan; (2) the discharge of Meritor employees did not constitute "job elimination" or "lack of work" triggering severance payments; (3) the plaintiffs had no vested right to severance pay; (4) the FDIC properly exercised its repudiation powers; (5) the plaintiffs did not incur "actual direct compensatory damages" as provided in 12 U.S.C. § 1821(e)(3); (6) the FDIC properly terminated life and health insurance benefits pursuant to the termination provisions in these employee welfare benefit plans; (7) the FDIC was not liable for a statutory penalty under 29 U.S.C. § 1132(c)(1) as a result of its failure to respond in a timely manner to

plaintiffs' request for plan documents; and (8) the certification of three plaintiff classes was inappropriate. Because we conclude that the district court did not err in granting summary judgment to the FDIC on plaintiffs' claims for separation pay, health insurance benefits, and life insurance benefits, we will affirm the orders of the district court. Further, because we conclude that the district court did not abuse its discretion in finding that the FDIC is not liable for the statutory penalty prescribed by 29 U.S.C. § 1132(c), we will affirm the order of the district court pertaining to this issue. Finally, because of our conclusion on the merits, that the district court did not err in granting summary judgment for the FDIC, we need not reach the class certification issues.

## I. FACTS & PROCEDURAL HISTORY

On December 11, 1992, the Secretary of Banking of the Commonwealth of Pennsylvania issued an order declaring Meritor Savings Bank ("Meritor") insolvent and directing that the bank be closed. On the same day, the FDIC was appointed as receiver for the insolvent bank. As receiver, the FDIC executed a Purchase and Assumption Agreement with Mellon Bank ("Mellon") transferring a portion of Meritor's assets and liabilities to Mellon. The FDIC retained the liabilities not assumed by Mellon, along with the unpurchased Meritor assets, which the FDIC proceeded to liquidate for the benefit of Meritor's approved creditors.

The record demonstrates that until the Secretary of Banking declared the bank insolvent, Meritor maintained a separation pay

plan ("SPP"), a retiree health insurance plan (the Meritor Medical Plan 65 Special Option or "65 Special"), and a retiree life insurance plan (the Meritor Group Life Insurance Plan or "MGLIP").[1]  Under the SPP, eligible employees were entitled to severance pay based on their years of service and salary, up to a maximum benefit of twenty-six weeks.  Benefits were payable for involuntary termination due to "lack of work, job elimination, reorganization or reduction-in-force."  Campbell App. at 139a. No benefits would be paid if separation resulted from sale or disposition of a portion of Meritor's assets and the employee was employed by the successor entity.  Id.

The SPP was "unfunded," meaning all benefits were paid from the general assets of Meritor.  Id. at 141a.  Meritor retained sole authority to determine whether a separation entitled an employee to benefits.  Id.  Moreover, Meritor expressly reserved the right to modify or discontinue the SPP in whole or in part at any time.  Id. at 137a.

Under the 65 Special, Meritor provided group health insurance coverage for its retirees.  Id. at 406a.  The 65 Special was a self-insured plan that qualified as an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001–1461

---

[1].  The parties stipulated to the material facts in these cases. Statement of Undisputed Facts, Hennessy App. at 187–95; Joint Statement of Undisputed and Disputed Facts Regarding Motions for Summary Judgment, Campbell App. at 403a–70a; Joint Statement and Joint Supplemental Statement of Disputed and Undisputed Facts, Adolph App. at 367a–437a.

("ERISA").  The MGLIP, also an employee welfare benefit plan under ERISA, provided retirees with death benefit coverage equal to the lesser of $50,000 or 25% of the amount of death benefit coverage for which they were insured immediately prior to retirement.  Id. at 405a-06a.

Meritor explicitly reserved the right to terminate the 65 Special and the MGLIP at any time.  The health plan provided:

> Meritor intends the plan to be permanent, but since future conditions affecting your employer cannot be anticipated or foreseen, Meritor reserves the right to amend, modify or terminate the plan at any time, which may result in the termination or modification of your coverage.  Expenses incurred prior to the plan termination will be paid as provided under the terms of the plan prior to its termination.

Id. at 165a (emphasis omitted).  The life insurance plan provided:

> Meritor reserves the right to terminate the group life insurance policy for its employees and retirees at any time, if Meritor determines that such termination is in its best interests.  If Meritor terminates its group life insurance policy, employees and retirees who die after the effective date of the termination . . . will not have any life insurance.

Id. at 152a.

On the day the Secretary declared Meritor insolvent, a meeting was held to discuss the status of Meritor's employees. At that meeting, Jack Goodner, the FDIC's closing manager, made a brief presentation.  When he finished his remarks, an employee asked him whether severance benefits would be paid.  Goodner thought not, but was not sure.  After looking towards two other FDIC officials for guidance, Goodner responded "no."  At the

close of business on December 11, 1992, the former Meritor employees became employees of Keytech Resources, Inc., a firm established to provide staffing for the former Meritor offices purchased by Mellon. Mellon paid severance benefits to the employees who were subsequently laid off based on their years of service to Meritor, up to a maximum of four weeks salary.

On the Monday following the events of Friday, December 11, 1992, the former branches of Meritor opened for business as usual under the name of Mellon-PSFS without interruption of business to regular customers. The FDIC subsequently repudiated the SPP pursuant to its powers under 12 U.S.C. § 1821(e). The FDIC did not repudiate either the 65 Special or the MGLIP plans. Instead, the FDIC sent letters to the former employees and retirees of Meritor notifying them that their health and life insurance plans were terminated effective December 31, 1992 pursuant to the terms of each plan.[2] Those letters advised the employees about the availability of FDIC-sponsored continuing medical coverage, and also provided specific instructions for filing claims for benefits under the FDIC's statutory claims process, alerting the employees and retirees to a March 19, 1993 bar date for filing claims against the assets of the receivership.

### A. The Hennessy Plaintiffs

---

[2]. Consistent with the above facts, when we use the term "repudiation," we are referring to the statutory power of a receiver under 12 U.S.C. § 1821(e) to refuse to recognize a contract. "Termination," by contrast, refers to the discontinuing of a plan pursuant to the plan's own terms.

The Hennessy plaintiffs are former managers of Meritor. They filed suit in the Eastern District of Pennsylvania alleging the right to recover severance pay pursuant to the terms of the SPP. In support of their claim, they rely on the above-stated facts and the fact that, prior to the FDIC's takeover of Meritor, each of them received a letter from Meritor's Chairman, Roger Hillas, stating:

> Meritor senior management is acutely aware that [it] is essential to retain motivated employees such as you in key positions.
>
> As evidence of this awareness, Meritor is extending the severance benefit provided to you under the Separation Pay Program to a total of 52 weeks pay. This enhanced benefit will be payable under the same terms and conditions as provided for in the Separation Pay Program if you are separated from employment by Meritor anytime on or before December 31, 1992.

Letter from Hillas to John Hennessy (October 3, 1990); Hennessy App. at 68. The Hennessy plaintiffs argued before the district court that their severance rights under the SPP were activated when "they were terminated as part of a reorganization." Hennessy v. FDIC, 858 F. Supp. 483, 487 (E.D. Pa. 1994).

The district court rejected the Hennessy plaintiffs' argument. The court explained that the FDIC sold Meritor to Mellon and was in the process of liquidating the rest of Meritor's assets. Id. The court reasoned that because the FDIC was involved with the termination of Meritor, rather than the continuation of its business, there was no reorganization. Id.

In the alternative, the Hennessy plaintiffs argued before the district court that given the FDIC's repudiation of the SPP,

the plaintiffs should be able to recover severance pay pursuant to 12 U.S.C. § 1821(e)(3) which provides for compensation for actual direct compensatory damages attributable to a repudiation. Id. at 488-89. The district court disagreed. Relying on the decision of the Court of Appeals for the First Circuit in Howell v. FDIC, 986 F.2d 569 (1st Cir. 1993), the district court determined that severance payments are not actual direct compensatory damages under § 1821(e)(3). Id. at 489. Accordingly, the district court granted summary judgment in favor of the FDIC. Id. at 485. This appeal followed.

## B. The Campbell Plaintiffs

The Campbell plaintiffs include: (1) David Campbell, Jr., an employee who retired from Meritor effective December 1, 1987; (2) Robert Hanna, Helen DeMarco, and Leslie Voth, employees who were employed by Meritor on December 11, 1992; and (3) potential plaintiff classes comprised of the above named plaintiffs and those similarly situated. The Campbell plaintiffs filed claims for benefits with the FDIC. The FDIC, however, rejected these claims.

Subsequent to the FDIC's denial of their claims, the Campbell plaintiffs filed suit in the United States District Court for the Eastern District of Pennsylvania. In their complaint, plaintiffs Hanna and DeMarco sought severance payment pursuant to the SPP. Plaintiff Campbell sought a declaration that he and other similarly situated persons are entitled to health insurance coverage under the 65 Special. Campbell also

sought reimbursement with interest for health insurance premiums paid since December 11, 1992. In addition to these claims, plaintiffs Campbell and Hanna sought a declaration that they and other similarly situated persons are entitled to life insurance under the MGLIP. They also sought reimbursement with interest for life insurance premiums paid since December 11, 1992. Finally, plaintiffs Campbell, Hanna, Voth and DeMarco sought a monetary penalty under ERISA for the FDIC's failure to provide in a timely manner information requested by their counsel.[3]

The district court denied Hanna and DeMarco's claims for severance pay under the SPP for the reasons set forth in its decision in Hennessy. Campbell v. FDIC, No. CIV.A.93–3969, 1994 WL 475067, at *4 (E.D. Pa. Aug. 29, 1994). In addition, the court found that it did not have jurisdiction to hear the claims brought by Campbell or Voth because these claims were filed prematurely.[4] Id. Nevertheless, the court concluded that even if it had jurisdiction to hear Campbell's claims for health and life insurance benefits, these claims would fail because the FDIC terminated both the 65 Special and the MGLIP pursuant to its

___

[3]. Plaintiffs' counsel sent an ERISA document request to the FDIC on March 16, 1993. The FDIC did not respond to the ERISA document request until September 21, 1993, 189 days after the initial request.

[4]. The court concluded that Campbell's and Voth's claims were premature because these plaintiffs did not wait the requisite 180 days after filing their claims with the FDIC before filing their actions in district court. Campbell, 1994 WL 475067, at *4. The court noted, however, that Campbell and Voth were added as individual plaintiffs in the Adolph case by the filing of the First Amended Complaint in that case and thus these plaintiffs asserted a timely filing in Adolph. Id. at *7 n.7.

contractual rights.  Id.  Finally, the district court granted summary judgment in favor of the FDIC on the plaintiffs' claims for a statutory penalty because it concluded that: (1) the statutory penalty should not apply to the FDIC, an agency of the federal government; or (2) even if the statutory requirement does apply to the FDIC, the court would exercise its discretion under 29 U.S.C. § 1132(c) and award no penalty in this case.  Id. at *7.

With respect to the potential class claims, the district court denied plaintiffs' motion to certify a separation pay plan class, a retiree health class, and a life insurance class. Campbell v. FDIC, No. 93-3969 (E.D. Pa. June 30, 1994) (order denying class certification).  The court determined that the plaintiffs could not satisfy all four of the threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure for certifying a plaintiff class.  Id. at 5, 7, 8.  In addition, the district court found that class certification under Rule 23(b)(1) or Rule 23(b)(2) would be inappropriate.  Id. at 9. This appeal followed.

## C.  The Adolph Plaintiffs

The Adolph plaintiffs are a group of 161 former Meritor employees and retirees.[5]  In their complaint, also filed in the United States District Court for the Eastern District of

---

[5].  On July 22, 1994 the district court entered an order granting the plaintiffs' unopposed motion to amend the complaint in this matter to add David Campbell and Leslie Voth as plaintiffs.

Pennsylvania, the employee plaintiffs challenged the repudiation of the SPP by the FDIC. The retiree plaintiffs challenged the termination of their medical benefits under the 65 Special. In addition, both the employee and retiree plaintiffs challenged the termination of the MGLIP. The FDIC and the Adolph plaintiffs filed motions for summary judgment on July 26, 1994. The district court granted summary judgment for the FDIC for the reasons detailed in Hennessy and Campbell. Adolph v. FDIC, No. 94-1499 (E.D. Pa. Aug. 29, 1994) (order granting summary judgment). This appeal followed.

## II. JURISDICTION

These cases commenced under the Financial Institutions Reform, Recovery and Relief Act of 1989 ("FIRREA") and ERISA. The district court's jurisdiction was predicated upon 28 U.S.C. § 1331. We have jurisdiction over the instant appeals pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. Because the material facts in this matter are not in dispute, we review only for errors of law. As to the Campbell plaintiffs' argument that an ERISA penalty should be assessed pursuant to 29 U.S.C. § 1132(c)(1), our review is for abuse of discretion.

## III. SEVERANCE PAY

### A. Was there a Reorganization?

The Hennessy plaintiffs' first contention is that Meritor was "reorganized," triggering a right to severance payments under

the terms of the SPP.  According to these plaintiffs, Mellon Bank acquired Meritor as a going concern following the FDIC's takeover of Meritor.  The Hennessy plaintiffs point out that Meritor's offices opened for business as usual on the next business day after the takeover under the trademark "Mellon-PSFS."  They assert that because Meritor continued as a going concern without interruption of business, they have a right to severance payments under the terms of the SPP.

We are unpersuaded by this argument.  The written terms of the SPP provide that:

> If the Employee is involuntarily terminated for organizational reasons associated with lack of work, job elimination, reorganization, or reduction in force . . . he/she will be eligible to receive bi-weekly separation payments and benefit continuation as outlined in Section IV of the Plan Document.

Meritor Separation Pay Program (effective November 1, 1989); Campbell App. at 129a (emphasis added).  The district court determined that both the facts and the law in this case did not support the conclusion that the Hennessy plaintiffs were terminated as part of a reorganization.  Hennessy, 858 F. Supp. at 487.  It reasoned that the FDIC's takeover and sale of a bank's assets constituted a termination of the bank's business, not a continuation of this business.  Id.  We agree with the determination of the district court.

A receiver, unlike a conservator, does not have as its purpose the preservation of an institution as a going concern. Resolution Trust Corp. v. CedarMinn Bldg. Ltd. Partnership, 956

F.2d 1446, 1454 (8th Cir.), cert. denied, ___ U.S. ___, 113 S. Ct. 94 (1992). Receivers have the power to liquidate and wind up the affairs of an institution. Id. (citing FDIC v. Grella, 553 F.2d 258, 261 (2d Cir. 1977)). As the Court of Appeals for the Eighth Circuit has recognized, this distinction was emphasized in the Conference Report accompanying FIRREA, which stated:

> The title . . . distinguishes between the powers of a conservator and receiver, making clear that a conservator operates or disposes of an institution as a going concern while a receiver has the power to liquidate and wind up the affairs of an institution.

Id. (quoting H.R. Conf. Rep. No. 209, 101st Cong., 1st Sess. 398 (1989)).

The Secretary of Banking for the Commonwealth of Pennsylvania closed Meritor Savings Bank. The FDIC was appointed receiver and it sold some of Meritor's assets to Mellon. As part of this transaction, Mellon agreed to assume some of Meritor's liabilities. The FDIC proceeded to liquidate the remaining assets of Meritor for the benefit of Meritor's creditors. These actions are commensurate with the winding up of a failed bank's affairs and the proper function of a receiver. To suggest that these actions constituted a reorganization of Meritor is to turn a blind eye to the dispositive facts. We therefore cannot conclude that the district court erred in its determination that Meritor did not undergo a reorganization that would trigger plaintiffs' rights to severance pay.

### B. "Job Elimination" or "Lack of Work"

Rather than arguing that Meritor was reorganized, the Adolph and Campbell plaintiffs suggest that under the terms of the SPP, "job elimination" or "lack of work" triggered the receiver's obligation to pay severance benefits. According to these plaintiffs, the district court failed to adequately consider this argument when it simply relied on its discussion in Hennessy to grant summary judgment in favor of the FDIC in the Campbell and Adolph cases.[6] The Adolph and Campbell plaintiffs assert that because the FDIC, as receiver, stands in the shoes of Meritor, it must provide separation benefits pursuant to the written terms of the SPP.

This argument also misses the mark. As stated above, the written terms of the SPP provide:

> IF the Employee is involuntarily terminated for organizational reasons associated with lack of work, job elimination, reorganization, or reduction in force . . . he/she will be eligible to receive bi-weekly separation payments and benefit continuation as outlined in Section IV of the Plan Document.

Meritor Separation Pay Program (effective November 1, 1989); Campbell App. 129a (emphasis added). Job elimination, however, is defined by the plan to be if "as a result of a reorganization, changing business needs, or the sale, closure or relocation of an office, a specific position is determined to be unnecessary to the company for an indefinite period of time." Id. at 128a. The Secretary of Banking's shutdown of Meritor and the appointment of

---

[6]. The district court's discussion in Hennessy did not specifically address this argument.

the FDIC as receiver was not "reorganization, changing business needs, or the sale, closure or relocation of an office." It was the shutdown of the entire bank. Further, no specific position was "determined to be unnecessary to the company for an indefinite period of time." Rather, Meritor ceased to exist, and the employment of all employees (not specific positions) was terminated permanently. We therefore cannot conclude that "job elimination" triggered a right to severance pay.

Similarly, we cannot conclude that a "lack of work," as defined by the plan, triggered the right to severance benefits. Lack of work is defined by the plan to be if "as a result of a decrease in volume of work to be done, a position is temporarily not needed." Id. at 128a (emphasis added). The facts of this case do not support the view that a position was "temporarily not needed." The Secretary of Banking closed the entire bank and declared Meritor insolvent. We therefore fail to see how the Campbell and Adolph plaintiffs have demonstrated a "lack of work" as the plan defines that phrase. Accordingly, we are unpersuaded that the district court erred in failing to find this argument a sufficient basis upon which to ground a claim for severance benefits.[7]

---

[7]. The Hennessy plaintiffs did not rely on "job elimination" or "lack of work" as a basis for recovery in their briefs before this Court. At oral argument, however, counsel for the Hennessy plaintiffs stated that she believed that "job elimination" or "lack of work" would be an alternative grounds of recovery for her clients. Further, she stated that the plan document containing the definitions of "job elimination" and "lack of work" received by the Campbell and Adolph plaintiffs was not received by the Hennessy plaintiffs.

C. Did plaintiffs' right to severance pay vest?

Using slightly different approaches, the Hennessy plaintiffs, and the Campbell and Adolph plaintiffs, next argue that their rights to severance pay were "fixed and unconditional" when the receiver was appointed. Based on certain language in the Court of Appeals for the First Circuit's opinion in Kennedy v. Boston–Continental National Bank, 84 F.2d 592 (1st Cir. 1936), the Hennessy plaintiffs argue that their rights to severance benefits vested on the day that Meritor closed its doors and went into receivership. The Campbell and Adolph plaintiffs, by contrast, assert that the Meritor employees had fixed, enforceable contract rights to severance pay throughout the term of their employment as the result of their total compensation package. According to the Campbell and Adolph plaintiffs, the only contingent aspect of their right to severance pay was the amount of the benefits to be paid, an amount that was tied to each employee's salary and years of service. These plaintiffs cite Citizens State Bank of Lometa v. FDIC., 946 F.2d 408, 415 (5th Cir. 1991), and that case's analysis of a standby letter of credit, to support their argument.

(..continued)
While the Hennessy plaintiffs' argument along these lines raises certain questions about which plan documents are applicable to them, we need not decide these questions because of our determination, see infra part III.D., that the FDIC repudiated the SPP.

We find these arguments unconvincing.  The rights and liabilities of a bank and the bank's debtors and creditors are fixed as of the date of the declaration of a bank's insolvency. American Nat'l Bank of Jacksonville v. FDIC, 710 F.2d 1528, 1540 (11th Cir. 1983) (citing First Empire Bank v. FDIC, 572 F.2d 1361, 1367-68 (9th Cir.), cert. denied, 439 U.S. 919, 99 S. Ct. 293 (1978); FDIC v. Grella, 553 F.2d 258, 262 (2d Cir. 1977); Kennedy, 84 F.2d at 597).  To establish a claim against an insolvent bank in receivership, the liability of the bank must have accrued and become unconditionally fixed on or before the time it is declared insolvent.  Kennedy, 84 F.2d at 597 (citations omitted).  As the Court of Appeals for the First Circuit has stated:

> The amount of a claim may be later established, but it must be the amount due and owing at the time of the declaration of insolvency . . . .  If nothing is due at the time of insolvency, the claim should not be allowed . . . .

Id.; see also Dababneh v. FDIC, 971 F.2d 428, 434 (10th Cir. 1992) (courts analyze "provability" of claims and creditors possess "provable" claims only if claims are "in existence before insolvency") (quoting FDIC v. Liberty Nat'l Bank, 806 F.2d 961, 965 (10th Cir. 1986)).

The language that the Hennessy plaintiffs cite in Kennedy is not to the contrary.  To support their argument, the Hennessy plaintiffs point to language in Kennedy that states:

> Had the lease contained a covenant that insolvency shall be breach of the lease and thereupon, without any further action by the lessor, the lease shall terminate and the lessor shall be entitled forthwith to damages measured as

    provided in the covenant of the lease for liquidated
    damages, then, on the declaration of insolvency, no doubt a
    claim would arise and be matured by the agreement for
    liquidated damages . . . so that the claim would be provable
    in bankruptcy.

Kennedy, 84 F.2d at 597 (citations omitted).  Aside from the fact

that the Hennessy plaintiffs' position ignores the holding of

Kennedy -- that the claim for failure to rent in that case was

too contingent and uncertain to support liability -- these

plaintiffs have made no showing that insolvency itself triggered

their rights under the SPP.  The terms of the SPP do not provide

that a declaration of insolvency triggers payment of severance

benefits.  Accordingly, their right to severance benefits was

still contingent at the time of the appointment of the receiver.

    The Campbell and Adolph plaintiffs' right to severance pay

was likewise contingent, and their reliance on Citizens State

Bank of Lometa is unavailing.  In Lometa, the Court of Appeals

for the Fifth Circuit held that claims that "originated" from

standby letters of credit issued before the bank became insolvent

passed the "provability test" even though the triggering event

obligating the bank to pay did not occur until after the bank

became insolvent.  Lometa, 946 F.2d at 415.  The court in Lometa,

however, explained that standby letters of credit are not

contingent liabilities; they are loans.  Id. at 414.  Therefore,

such letters are not directly comparable to a severance pay plan

under which no vested benefits accrue until a contingency is

fulfilled.  Accordingly, we remain unconvinced that the

plaintiffs had a vested right to benefits prior to, or at the time of, the appointment of the receiver.

## D. Repudiation

Having determined that there was no event that triggered the payment of severance benefits, it would ordinarily be unnecessary to dispose of the other issues raised by the parties regarding their entitlement to severance pay, i.e., repudiation and whether the failure to pay severance benefits constituted actual direct compensatory damages under FIRREA. However, the parties have forcefully argued their positions regarding the various "triggering" provisions, and have at least implied that they are susceptible to more than one reasonable interpretation. We would normally commit the task of construing ambiguous contract terms to the fact finder after extrinsic evidence has been adduced. We do not do so here because even if we were to assume a triggering event had occurred, we would nonetheless affirm the district court's grant of summary judgment in favor of the FDIC because the FDIC repudiated the SPP pursuant to its statutory authority under 12 U.S.C. § 1821. See PACC v. Rizzo, 502 F.2d 306, 308 n.1 (3d Cir. 1974), cert. denied, 419 U.S. 1108, 95 S. Ct. 780 (1975) (we can affirm the district court on any ground).

The Hennessy, Campbell, and Adolph plaintiffs all allege that following the FDIC's appointment as receiver, the FDIC did not properly repudiate the SPP pursuant to the statutory requirements found at 12 U.S.C. § 1821(e)(1). According to the plaintiffs, 12 U.S.C. § 1821(e)(1) requires the FDIC to make

formal findings that the terms of the SPP were "burdensome" and that repudiation is necessary in order to "promote the orderly administration of the institution's affairs."  The plaintiffs argue that the FDIC made no such formal findings in this case and therefore any repudiation of the SPP was ineffective.  Further, the Hennessy plaintiffs argue that the FDIC improperly relied on an undisclosed policy of denying all claims for severance benefits in repudiating the SPP.[8]

---

[8]. In addition to this procedural argument, the Hennessy plaintiffs suggest that the FDIC's repudiation power is limited to executory contracts.  These plaintiffs cite LaMagna v. FDIC, 828 F. Supp. 1 (D.D.C. 1993) in support of their position.

In LaMagna, the district court determined that an employment agreement which provided for severance pay was nonexecutory once the employee had rendered his services by working for one year. Id. at 2-3.  The court concluded that such nonexecutory contracts may not be repudiated by the FDIC pursuant to FIRREA.  Id.

We are unpersuaded by the district court's reasoning in LaMagna.  The district court's conclusory holding that § 1821(e) does not permit the receiver to repudiate a "nonexecutory" contract lacks support in both the statutory language and the case law.  As many courts have noted, the statute explicitly provides that a conservator or receiver "may disaffirm any contract or lease," not just executory contracts.  E.g., Employees' Retirement System of Alabama v. Resolution Trust Corp., 840 F. Supp. 972, 984 (S.D.N.Y. 1993) (quoting § 1821(e)(1)(A)) (emphasis in original).  This provision is in sharp contrast to the Bankruptcy Code which specifically refers only to the trustee's power to reject executory contracts.  See Morton v. Arlington Heights Fed. Sav. & Loan Ass'n, 836 F. Supp. 477, 481-82 (N.D. Ill. 1993); Employees' Retirement System of Alabama, 840 F. Supp. at 984 (noting marked contrast with the Bankruptcy Code which gives a trustee in bankruptcy the power to "assume or reject any executory contract." (quoting 11 U.S.C. § 365(a))).  Because Congress provided no such limitation here, we are unable to conclude that the FDIC's power of repudiation is limited only to executory contracts.

The provisions governing a receiver's authority to repudiate contracts can be found at 12 U.S.C. § 1821(e). Section 1821(e) states, in pertinent part:

(1) Authority to repudiate contracts

In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease--

(A) to which the institution is a party;
(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

12 U.S.C. § 1821(e)(1) (Supp. V 1993). Section 1821(e) does not set forth a specific procedure for a receiver to follow in repudiating a contract. Indeed, section 1821(e) leaves the decision as to whether repudiation is "burdensome" and "necessary to promote the orderly administration of the institution" to the receiver's discretion so long as repudiation is accomplished within "a reasonable period" following the receiver's appointment. 12 U.S.C. § 1821(e)(2).

Courts have refused to read into this statutory language any requirement for formal findings in support of a decision to repudiate. In addressing this precise issue in a case involving a receiver's obligation to pay rent, the Court of Appeals for the Second Circuit recently stated:

First, there is no requirement that the conservator or receiver make a formal finding that a lease or contract is burdensome. Second, it can hardly be said that it was not reasonable for the [receiver] to find that it would be burdensome for it to assume a $7 million obligation to pay rent on premises for which it no longer had use, at a time when the real estate market was declining. Third, whether the lease is burdensome is to be decided at the discretion of the conservator or receiver. 12 U.S.C. § 1821(e)(1)(B).

1185 Avenue of the Americas Assocs. v. Resolution Trust Corp., 22 F.3d 494, 498 (2d Cir. 1994). The court went on to uphold the district court's grant of summary judgment in favor of a receiver that claimed that it had repudiated a lease. Id.; see also Morton, 836 F. Supp. at 485 ("The statute does not require that the receiver give reasons for repudiating a contract . . . . "); Jenkins–Petre Partnership One v. Resolution Trust Corp., No. Civ.A.91–A–637, 1991 WL 160317, at *5 (D. Col. Aug. 13, 1991) ("The FIRREA statute does not provide that the [receiver] explain its actions or that a court may review the basis for that decision.").

We see no reason to depart from this line of cases. The claimants have failed to demonstrate that the SPP, which provided no benefit to the receivership, but which called for millions of dollars in payments, should not be considered "burdensome." In addition, we conclude that there is no basis in the statute or in the case law for requiring the FDIC, which has discretion in making the decision concerning whether to repudiate, to produce written findings.

Nor do we find merit in the Hennessy plaintiffs' argument that the FDIC's repudiation is invalid because it was carried out

pursuant to an undisclosed policy.  We fail to comprehend how a consistent denial of the same type of claim constitutes an abuse of the FDIC's discretion.  If anything, such a longstanding policy demonstrates a conscious decision to promote uniform treatment of similar claims.  Accordingly, we cannot conclude that the district court erred in determining that the FDIC's repudiation was not procedurally defective.

### E. Actual Direct Compensatory Damages

The three sets of plaintiffs next argue that even if the FDIC did properly repudiate the SPP, they are entitled to severance benefits as actual direct compensatory damages under 12 U.S.C. § 1821(e)(3).  The plaintiffs assert that severance pay in the context of at will employment represents additional compensation for entering into such a relationship and is therefore a compensable loss if not paid.  The plaintiffs rely on the decision of the Court of Appeals for the District of Columbia Circuit in Office and Professional Employees Int'l Union, Local 2 v. FDIC, as Receiver of Nat'l Bank of Washington ("NBW"), 27 F.3d 598 (D.C. Cir. 1994), to support their position.

While the question is close, we remain unconvinced by the plaintiffs' argument.  FIRREA provides, in pertinent part, that:

> the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be--
> (i) limited to actual direct compensatory damages; and

```
        (ii) determined as of--
              (I) the date of the appointment of the conservator
              or receiver; . . . .
```

12 U.S.C. § 1821(e)(3)(A) (Supp. V 1993).  The statute states,
however, that the term "actual direct compensatory damages" does
not include:

```
     (i) punitive or exemplary damages;
     (ii) damages for lost profits or opportunity; or
     (iii) damages for pain and suffering.
```

12 U.S.C. § 1821(e)(3)(B) (Supp. V 1993) (emphasis added).  The
courts are split over the proper interpretation of these
provisions.  The Court of Appeals for the First Circuit has
determined that the phrase "actual direct compensatory damages,"
does not include severance payments stipulated in advance.
Howell v. FDIC, 986 F.2d 569, 573 (1st Cir. 1993).  According to
that court, such payments are "at best an estimate of likely harm
made at a time when only prediction is possible" and are
analogous to "liquidated damages."  Id.  That court reasoned that
because those employees entitled to severance pay "may, or may
not, have suffered injury," depending on the employment options
they had in the past and the options available now, and because
"[c]onceivably," such employees could have suffered "no damage at
all," severance payments of this type do not fit within the
language of the statute.  Id.; see also Resolution Trust Corp. v.
Management, Inc., 25 F.3d 627, 632 (8th Cir. 1994) ("Neither
severance fees nor future lost profits are compensable under
FIRREA."); Westport Bank & Trust Co. v. Geraghty, 865 F. Supp.
83, 86 (D. Conn. 1994) ("Courts have found that damages resulting

from the repudiation of a severance package are not `actual direct compensatory damages' within the meaning of § 1821 because they are analogous to liquidated damages."); Aguilar v. FDIC, No. 92-4286 (RR), slip op. at 15-16 (E.D.N.Y. Oct. 4, 1993) (noting that courts have been unwilling to permit plaintiffs to recover amounts more akin to liquidated than compensatory damages); Lanigan v. Resolution Trust Corp., No. 91-7216, slip op. at 5-7 (N.D. Ill. March 30, 1993) (relying on the reasoning in Howell).

As the plaintiffs point out, however, the Court of Appeals for the District of Columbia Circuit has taken a different view. In NBW, a case involving a collective bargaining agreement between the National Bank of Washington and its employees, the court of appeals determined that in the context of an at will employment relationship, severance payments are "properly characterized as consideration for entering into (or continuing under) the employment contract and therefore are compensable as actual damages under FIRREA." NBW, 27 F.3d at 604. Rejecting the "liquidated damages" analogy used by the Court of Appeals for the First Circuit, the court determined that the FDIC was liable for severance payments. Id. at 604-05.

In addition to being confronted with division amongst the courts, we must contend with competing policy considerations. On the one hand, we have the concern raised in Howell that in drafting FIRREA, "Congress, faced with mountainous bank failures," was "determined to pare back damage claims founded on repudiated contracts." Howell, 986 F.2d at 572. On the other hand, we must address the point raised in NBW that the question

is not whether Congress meant to scale back damage claims, but "which damage claims, however few, are preserved." NBW, 27 F.3d at 604. Moreover, we are cognizant of the fact that disallowance of promised severance pay may chill a troubled bank's ability to effectively retain able employees. See Howell, 986 F.2d at 573.

We share the view of the Court of Appeals for the First Circuit that these payments are analogous to "liquidated damages." We therefore agree with the position of the district court in this case that these damages are not compensable as "actual direct compensatory damages" under 12 U.S.C. § 1821.[9] Accordingly, we will affirm the order of the district court granting summary judgment to the FDIC on the issue of separation pay.

## IV. TERMINATION OF HEALTH AND LIFE INSURANCE BENEFITS

The Campbell and Adolph plaintiffs next allege that the district court erred in granting summary judgment against them on their claims for health and life insurance benefits pursuant to the 65 Special and the MGLIP.[10] According to these plaintiffs,

_____

[9]. In reaching this decision, we are not unmindful of the Hennessy plaintiffs' argument that under the terms of this severance pay plan, benefits are actually accelerated if the discharged employee finds other employment. Hennessy App. at 106 ("If you are otherwise qualified for separation payments and then become employed during the benefit payment period . . . [y]ou will then receive a single-sum cash payment equal to the remaining separation pay to which you would have been entitled had you remained unemployed."). Nevertheless, we believe that the function of these provisions is to articulate the timing of the payment of benefits rather than to relate the purpose behind the SPP.

[10]. The Hennessy plaintiffs take no part in this argument.

the district court erred in determining that the provisions of § 402(b)(3) of ERISA, 29 U.S.C. § 1102(b)(3), requiring that every employee benefit plan provide a "procedure for amending such plan," apply only to plan amendments and not to plan terminations. These plaintiffs argue that because the FDIC did not follow the proper "procedure" in terminating their life and health insurance benefits, the FDIC should be responsible for these benefits until such time as the FDIC complies with ERISA. They suggest that a remand is appropriate to decide this question.

Relying on our previous decision in Schoonejongen v. Curtiss-Wright Corp., 18 F.3d 1034 (3d Cir. 1994), the district court held that when a party seeks to terminate an ERISA plan, there is no requirement that the ERISA plan have a termination procedure. Campbell, 1994 WL 475067, at *5. Subsequent to the district court's opinion in this matter, however, the Supreme Court reversed our panel's decision in Schoonejongen. Curtiss-Wright Corp v. Schoonejongen, ___ U.S. ___, 115 S. Ct. 1223 (1995). Following that reversal, we decided the case of Ackerman v. Warnaco, Inc., No. 94-3527, 1995 WL 289682 (3d Cir. May 15, 1995). In that case, we explicitly held that § 402(b)(3) of ERISA applies to plan terminations as well as plan amendments. Ackerman, 1995 WL 289682, at *3. Accordingly, we conclude that the district court erred in holding to the contrary.

Nevertheless, we cannot agree that a remand is appropriate or that the district court erred in granting summary judgment for the FDIC. Section 402(b)(3) of ERISA requires that every

employee benefit plan shall "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan."  29 U.S.C. § 1102(b)(3) (1988).  The summary plan booklet for the 65 Special states that:

> Meritor intends the plan to be permanent, but since future conditions affecting your employment cannot be anticipated or foreseen, Meritor reserves the right to <u>amend</u>, modify or terminate the plan at any time, which may result in the termination or modification of your coverage.

Campbell App. at 165a.  Similarly, the summary plan booklet for the MGLIP states:

> Meritor reserves the right to terminate the group life insurance policy for its employees and retirees at any time, if Meritor determines that such termination is in its best interests.  If Meritor terminates its group life insurance policy, employees and retirees who die after the effective date of the termination (other than those who are totally disabled and insured under the provision of "Continuation of Life Insurance During Disability") will not have any life insurance.

Campbell App. at 152a.  While section 402(b)(3) of ERISA requires that every employee benefit plan have a procedure for amending or terminating the plan, the Supreme Court has determined that language such as that stated above reserving the right of "the Company" to modify or amend a plan satisfies the requirements of section 402(b)(3).  <u>Curtiss-Wright</u>, ___ U.S. at ___, 115 S. Ct. at 1228-29 ("Curtiss-Wright is correct, we think, that this states an amendment procedure and one that, like the identification procedure, is more substantial than might first appear.").  The Court explained that "the literal terms of § 402(b)(3) are ultimately indifferent to the level of detail in an

amendment procedure, or in an identification procedure for that matter."  Id. at ___, 115 S. Ct. at 1229.  Further, the Court explained that "principles of corporate law provide a ready-made set of rules for determining, in whatever context, who has authority to make decisions on behalf of the company."  Id. Because the 65 Special and the MGLIP reserve to Meritor (the Company) the right to terminate these plans, we find no violation of the terms of section 402(b)(3).

The question therefore becomes what "procedure" the FDIC must follow when it is appointed receiver for Meritor and it terminates an employee welfare benefit plan pursuant to such a reservation clause.  Certainly, under such circumstances, it would make little sense to require the FDIC to follow Meritor's procedure for terminating these plans (i.e., calling a meeting of the Board of Directors of Meritor or taking other corporate action).  While the appropriate analog within the FDIC to Meritor's Board of Directors is not immediately apparent, it is clear that an official receiver has great discretion in taking action that would previously have been handled through the normal methods of corporate governance.  Thus, the receiver alone may act in ways that might otherwise require Board action.  The record reflects, and the plaintiffs concede, that on December 11, 1992, "the FDIC" sent the Campbell and Adolph plaintiffs mailings notifying them of the termination of the 65 Special and the MGLIP.  Joint Statement of Undisputed And Disputed Facts Regarding Motions for Summary Judgment, Campbell App. at 416a-17a; Joint Statement of Undisputed and Disputed Facts Regarding

Motions for Summary Judgment, Adolph App. at 368a (incorporating statement of undisputed facts in Campbell case by reference). Since the plaintiffs acknowledged that they received notice of the plan terminations from "the FDIC," we decline to require further investigation into the methods by which the FDIC makes its decisions. Accordingly, we will uphold the district court's grant of summary judgment for the FDIC on plaintiffs' claims for health and life insurance benefits.

V. STATUTORY PENALTY UNDER 29 U.S.C. § 1132(c)(1)

The Campbell plaintiffs next allege that the district court erred in determining that the FDIC was not liable for the penalty found at 29 U.S.C. § 1132(c)(1) for failure to respond in a timely manner to a request for plan documents. According to these plaintiffs, their counsel sent an ERISA document request to the FDIC as administrator of the Meritor Pension Plan and the Meritor Savings Bank Savings Plan on March 16, 1993. The FDIC did not respond until September 21, 1993, 189 days after the initial request. Because ERISA provides that the plan administrator must mail requested material within 30 days of such a request, the Campbell plaintiffs assert that they are entitled to the requisite statutory penalty of up to $100.00 a day for each day the plan administrator failed to comply.

We cannot agree. ERISA provides that an administrator who fails or refuses to mail requested documents within 30 days after such request:

> may *in the court's discretion* be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B) (Supp. V 1993) (emphasis added).  The district court in this case made two alternative findings.  First, it determined that while by its terms ERISA's requirements and penalties apply to all administrators, "the requirement should not apply to the FDIC since it is an agency of the federal government."  Campbell, 1994 WL 475067, at *7.  Second, it determined that even if the statutory penalty for failure to provide requested information in a timely manner is applicable to the FDIC, "the court shall exercise its discretion under 29 U.S.C. § 1132(c)(1) and award no penalty in this case."  Id.  The court explained that any penalty applied "would be an unjustifiable windfall to the plaintiffs and would hinder the FDIC in achieving its public mission -- the orderly wrapping up of Meritor's affairs."  Id.

As the district court noted, the issue of whether the penalty provision of § 1132(c)(1) applies to the FDIC when it acts as receiver for a failed financial institution is one of first impression.  Id. at *6.  We agree that nothing on the face of § 1132(c) exempts the FDIC from the requirement of furnishing requested documents in a timely manner.  We therefore see no reason to adopt a rule categorically excluding the FDIC from this important ERISA obligation.  The reasoning of the district court, that the requirement should not apply to the FDIC since it is an

agency of the federal government, is unconvincing.  Employees'

need for access to significant information about plan coverage

does not diminish because the entity currently in charge of the

plan is an agency of the federal government.[11]

Concerning the district court's alternative holding,

however, we have previously determined that whether a district

court awards a plaintiff monetary damages under 29 U.S.C. §

1132(c)(1) is a matter of discretion.  Gillis v. Hoechst Celanese

Corp., 4 F.3d 1137, 1148 (3d Cir. 1993), cert. denied, ___ U.S.

, 114 S. Ct. 1369 (1994).  Since the district court did determine

that any penalty in this case would be an "unjustifiable

windfall" and "would hinder" the FDIC in "the orderly wrapping up

of Meritor's affairs," we cannot conclude that the district court

abused its discretion in declining to award a statutory penalty.

Accordingly, we will affirm the order of the district court

denying the Campbell plaintiffs a § 1132(c)(1) penalty award.


VI.  CLASS ACTION ISSUES

The Campbell plaintiffs also raise a number of issues

concerning the district court's decision to deny certification of

three plaintiff classes.  The district court determined that the

plaintiffs failed to establish the threshold requirements under

_____

[11].  The FDIC suggests that 12 U.S.C. § 1825(b)(3), a FIRREA
provision, creates an exemption from the ERISA penalty
requirement.  That provision states that the FDIC, when acting as
receiver, "shall not be liable for any amounts in the nature of
penalties or fines." 12 U.S.C. § 1825(b)(3).  Read as a whole,
however, § 1825 appears to concern exemptions from taxes.  We
therefore find this argument unconvincing.

Rule 23(a) of the Federal Rules of Civil Procedure.  Campbell,

No. 93-3969, at 5, 7, 9 (E.D. Pa. June 30, 1994) (order denying

class certification).  In addition, the district court found that

class certification under Rule 23(b)(1) or Rule 23(b)(2) would be

inappropriate.  Id. at 9.  Because of our decision on the merits

of the Campbell plaintiffs' claims, that these claims cannot

survive summary judgment, we need not address the propriety of

the district court's decision to deny class certification.  We

therefore take no position with respect to these issues.


                        VII. CONCLUSION

     The district court did not err in granting summary judgment

to the FDIC on the plaintiffs' claims for separation pay, health

insurance benefits, and life insurance benefits.  We will

therefore affirm the orders of the district court.  Further,

because the district court did not abuse its discretion in

declining to find the FDIC liable for the statutory penalty

prescribed by 29 U.S.C. § 1132(c)(1), we will affirm the order of

the district court pertaining to this issue.  Finally, because of

our conclusion on the merits of the Campbell plaintiffs' claims,

that the district court did not err in granting summary judgment

for the FDIC, we do not reach the class certification issues.

     Each party to bear its own costs.